## A05A2230. BROWN v. THE STATE.
### (626 SE2d 128)

ANDREWS, Presiding Judge.

Hozie James Brown, convicted by a jury of armed robbery and possession of a firearm during commission of a felony, appeals from the trial court's order denying his motion for new trial. Finding no error, we affirm.

1. We first consider Brown's third enumeration, challenging the sufficiency of the evidence.

> In evaluating the sufficiency of the evidence supporting a conviction, this court must view the evidence in the light most favorable to the verdict. The presumption of innocence no longer applies, and we do not weigh evidence or determine witness credibility. Rather, we decide only if there is enough evidence from which a rational trier of fact could have found the accused guilty of the crime charged beyond a reasonable doubt.

(Footnotes omitted.) *Buckles v. State*, 260 Ga. App. 638 (1) (580 SE2d 638) (2003).

So viewed, the evidence was that Zeb's Zip-In, a convenience store in Perry, was robbed by a lone gunman on Halloween evening in 1998. Feagin, the clerk, had started his shift at 10:00 p.m. and shortly thereafter, a man entered wearing dark glasses and an unusual striped black and white shirt with the initials "FB" on it. He made a purchase and left, then returned shortly. Feagin was selling another customer lottery tickets, but came to wait on the man in the striped shirt, who told him to continue with the lottery customer. After that customer left, the man in the striped shirt made a small purchase, then started to leave. As he got almost to the door, however, he turned, lifted his shirt, and pulled a handgun. He returned to the register and ordered Feagin to give him the money. Feagin put the cash drawer on the counter and the man removed all the bills. Feagin was then ordered to the floor and the man left.

The security camera in the store recorded still photos of the incident, which Feagin stated were fair and accurate depictions of the events that evening. The photos printed from that tape were introduced into evidence as State's Exhibits 2, 4, 5, and 3A through 3Z and 3AA through 3GG.

The Perry Police shift supervisor received a call regarding the robbery at 10:42 p.m. and dispatched officers, including the detective on duty, Roberts, who said he received the call at 10:50 p.m. Roberts arrived at the store at 11:15 p.m. As a result of receiving information from another agency that the man in the surveillance camera photos

appeared to be Brown, Roberts contacted Sharla Cooper, who was described as Brown's girlfriend. Roberts met with Cooper and showed her the photos. When asked if she recognized the shirt worn by the robber, Cooper started crying. Roberts requested that, if Cooper had a shirt like that in the photo, she bring it to police. Cooper testified that, after looking at the photos, she knew which shirt to bring to police because she had bought it for Brown from a man selling them from his van. Kendrick, Cooper's sister, later brought police a shirt from Cooper marked like the one the robber wore.

Cooper testified that Brown picked her up at her job at Cracker Barrel on Halloween around 10:00 p.m. to 10:30 p.m. It took approximately 15 minutes to get to their home. Upon arriving, she and Brown argued because he had not taken the children trick or treating. He then left and she did not see him again until early the next morning.

Detective Dodson interviewed Brown on February 8, 1999. Asked where he had been on Halloween, Brown said he picked up Cooper at Cracker Barrel about 9:30 p.m. on Halloween, but otherwise could not say exactly where he was that evening. Asked whether he went in Zeb's Zip-In that evening, Brown at times said he might have been in there. At other points in the interview, Brown said he did not go inside or did not recall doing so.

Brown's argument here regarding time differentials among the witnesses' recollections of that evening and the impossibility of his having committed the robbery under one scenario was thoroughly presented to and rejected by the jury. We will not reweigh this evidence.

> Where there is conflicting evidence, it is solely within the purview of the jury to weigh the evidence and decide upon the credibility of the witnesses. As long as there is *some competent evidence, even if contradicted,* to support the facts necessary for the State's case, the jury verdict will be upheld. *Ellison v. State,* 233 Ga. App. 637 (504 SE2d 779) (1998); *Williams v. State,* 231 Ga. App. 123, 125 (2) (497 SE2d 660) (1998).

(Emphasis supplied.) *Brown v. State,* 239 Ga. App. 794 (521 SE2d 925) (1999).

Further, Brown's argument that his identity as the robber was inadequately proven was also for the jury, because identity is a question of fact for the jury's resolution. *Barner v. State,* 271 Ga. App. 233, 235 (609 SE2d 385) (2005); see *Smith v. State,* 251 Ga. App. 452, 454 (1) (554 SE2d 596) (2001).

The photos from the surveillance camera are before us and are very clear. The jury had the opportunity to see Brown during the three days of trial and compare his appearance with the photos.

The evidence was legally sufficient. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Barner v. State*, supra.

2. Brown's first enumeration is that the trial court erred in denying his motion to dismiss the charges based on denial of his constitutional right to a speedy trial.

In reviewing the trial court's finding that Brown was not denied his constitutional right to a speedy trial, the issue is whether the trial court abused its discretion in balancing the four factors set forth in *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972). *State v. Johnson*, 274 Ga. 511, 512 (555 SE2d 710) (2001). "Those four factors are (1) the length of the delay; (2) the reason for the delay and whether this is attributable to the defendant or the state; (3) the timeliness of the defendant's assertion of the right to a speedy trial; and (4) prejudice to the defendant. These factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." (Citations and punctuation omitted.) Id.

Here, the crime occurred October 31, 1998, and Brown was arrested on February 8, 1999. An indictment was returned on March 2, 1999, 22 days following his arrest. On March 24, 1999, Brown was sentenced on other theft charges by the Superior Court of Peach County. On April 15, 1999, an attorney from the office of the public defender filed a motion seeking bond for Brown on the armed robbery charge. No ruling on this motion is contained in the record, but the record does reflect that a transport order was issued by the court on May 12, 2000, directing the Georgia Department of Corrections to return Brown to Perry for arraignment on the pending charges. Apparently, Brown was in custody on another conviction, possibly the 1999 theft charges. Brown was arraigned on June 1, 2000.

Motions for discovery were filed on Brown's behalf on March 20, 2001, followed by filing of a motion for continuance on March 28, 2001, based on the fact that Brown had not been brought back from the State system and counsel had only met with him once. Although no ruling on this motion is contained in the record, a transport order was issued on March 28, 2001, directing the Department of Corrections to transport Brown to Perry for the April 30, 2001 trial calendar.

On May 2, 2001, less than two weeks before the start of his trial on May 14, Brown's motion to dismiss was filed, premised on the passage of time from the crime to trial and that, during this time, "memories have faded and witnesses have moved away. . . ."

(a) *Length of the delay.* Here, as acknowledged by the State, 26 to 27 months passed between Brown's arrest and the trial of this case. While the State argues this amount of time is insufficient to be

presumptively prejudicial, we conclude this length of time is sufficient to require consideration of the remaining *Barker* factors. See *State v. Redding*, 274 Ga. 831, 832 (561 SE2d 79) (2002) (27-month delay raises presumption of prejudice); *Boseman v. State*, 263 Ga. 730, 732 (1) (438 SE2d 626) (1994); *Weldon v. State*, 262 Ga. App. 782, 784 (2) (a) (586 SE2d 452) (2003) (23-month delay presumptively prejudicial).

(b) *Reason for the delay.* At least portions of the delay encountered here were attributable to Brown's incarceration by the Department of Corrections on a conviction unrelated to the armed robbery charges. Also, portions are attributable to the inability of Brown's counsel to communicate with him and the fact that defense counsel changed during the case. At least one motion for continuance was filed by Brown and the delay occasioned by this is attributable to him.

Even though Brown was in state custody on another sentence, there has been no showing that the State dragged its feet in any effort to impede Brown's defense. " 'Therefore, although the delay attributable to the State is a negative factor, it is relatively benign. (Cit.)' [Cits.]" *Weldon v. State*, supra at 785 (2) (b). See also *Coney v. State*, 259 Ga. App. 525, 527 (b) (578 SE2d 193) (2003).

(c) *Defendant's assertion of his right to speedy trial.* Brown was accused of armed robbery, a capital offense for purposes of a demand for speedy trial under OCGA § 17-7-171. *Dotson v. State*, 253 Ga. App. 787, 788 (1) (560 SE2d 349) (2002). Because Brown failed to file such a demand and did not raise his constitutional right until shortly before his trial date 26 or 27 months after his arrest, this factor weighs against him. *Boseman v. State*, supra at 733 (1) (c); *Coney v. State*, supra at 527 (c).

(d) *Prejudice to defendant.* "As to the matter of prejudice, we weigh this factor most heavily in determining whether a defendant's constitutional rights have been violated. [Cit.]" *Jernigan v. State*, 239 Ga. App. 65, 67 (517 SE2d 370) (1999). A court determines prejudicial delay by considering three interests that the right to a speedy trial was designed to protect: preventing oppressive pretrial incarceration, minimizing undue anxiety and concern to the defendant, and reducing the possibility of impairing the defense. *Thomas v. State*, 274 Ga. 492, 495 (555 SE2d 693) (2001). "[T]o weigh the prejudice factor in the defendant's favor, the defendant must offer specific evidence that one or more of these interests apply." Id., citing *Jackson v. State*, 272 Ga. 782, 783 (534 SE2d 796) (2000).

Because the length of the delay raised a presumption of prejudice, the length of the delay is "considered a second time by factoring it into the prejudice prong of the *Barker* analysis." (Citations omitted.) *State v. Johnson*, supra at 512 (1).

Here, Brown filed a notice of alibi on May 4, 2001, in which he asserted that Cooper provided his alibi, as she testified at trial. No mention of the presence of his son with him and Cooper was made in this notice. During the renewal of his motion to dismiss at the beginning of the trial in May 2001, counsel stated only that "the defendant has a son who was *possibly* riding with him on the night this crime allegedly occurred." (Emphasis supplied.) According to counsel, the son had died a year before, which preceded the notice of alibi.

Therefore, the trial court properly concluded that the death of the son did not constitute such prejudice to Brown's defense as to require dismissal. No showing of any information not presented by Cooper which would have been available through the son was shown.

No showing was made regarding any undue anxiety or concern on Brown's part pending trial. "Anxiety and concern of the accused are always present to some extent, and thus[,] absent some unusual showing[,] are not likely to be determinative in defendant's favor." (Citations and punctuation omitted.) *Mullinax v. State,* 273 Ga. 756, 759 (2) (545 SE2d 891) (2001).

Therefore, there was no error in the trial court's denial of the motion to dismiss.

3. Finally, Brown contends the trial court erred in allowing into evidence State's Exhibits 2, 4, and 5.

As reflected above, State's Exhibits 3A through 3Z and 3AA through 3GG were photos made from the tape in the surveillance camera and were identified by the victim as fair and accurate depictions of what he witnessed that night. Brown's counsel stated that he had no objections to their introduction.

State's Exhibit 2 was a sequential print of six of the individual photos contained in Exhibits 3A through 3Z and 3AA through 3GG, while Exhibits 4 and 5 were enlargements of two of those photos. These photos were objected to by Brown based on *English v. State,* 205 Ga. App. 599 (1) (422 SE2d 924) (1992), because "[w]e feel like they've been enhanced or modified by a computer. We object on those grounds."

We first note that no evidence of anything other than normal enlargement of the photos was shown. Further, in *English,* supra, portions of a videotape had been computer enhanced and a single photographic depiction of the seller of cocaine was produced and allowed into evidence upon the technician's testimony that the enhanced photo was a fair and accurate representation of what appeared in the frozen frames of the videotape. No support for the argument made by Brown is found there.

The exhibits were admissible. *Wallace v. State,* 267 Ga. App. 801, 803 (1) (600 SE2d 808) (2004); *English,* supra.

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED JANUARY 9, 2006.

*Jeffrey L. Grube*, for appellant.
*Kelly R. Burke, District Attorney*, for appellee.