## A09A1803. MERRITT v. THE STATE.
### (685 SE2d 766)

MIKELL, Judge.

Pursuant to the grant of an out-of-time appeal, Michael Merritt challenges his 2004 convictions of armed robbery, OCGA § 16-8-41 (a); hijacking a motor vehicle, OCGA § 16-5-44.1; possession of a firearm during the commission of a felony, OCGA § 16-11-106; aggravated assault with a deadly weapon, OCGA § 16-5-21 (a) (2); false imprisonment, OCGA § 16-5-41; and burglary, OCGA § 16-7-1. Merritt argues that the evidence is insufficient to support his convictions and that the trial court erred in denying his *Batson* challenge. Discerning no error, we affirm.

1. When determining a challenge to the sufficiency of the evidence, "we must view the evidence in the light most favorable to the verdict[,] and the appellant no longer enjoys the presumption of innocence; moreover, on appeal this court determines evidence sufficiency and does not weigh the evidence or determine witness credibility."[1]

Conflicts in the testimony of the witnesses, including the [s]tate's witnesses, are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, the jury's verdict will be upheld.[2]

Construed in favor of the verdict, the evidence adduced at trial

---

[1] (Citation and punctuation omitted.) *Head v. State*, 279 Ga. App. 608 (1) (631 SE2d 808) (2006).

[2] (Citation, punctuation and footnote omitted.) *Truitt v. State*, 266 Ga. App. 56 (596 SE2d 219) (2004).

shows that Eric Haney was accosted by three men at his apartment complex on December 17, 2001, at approximately 6:00 p.m. One of the men was carrying what appeared to be an assault weapon. The assailants demanded his money, jewelry, and jacket, all of which Haney surrendered. Haney, who had just parked his Tahoe, also threw down his car keys. One of the men took the keys and went to the vehicle, and the other two men ordered Haney to enter his apartment. Once inside, the men placed Haney on the ground, held the weapon to his head, and demanded money and drugs. Haney stated that he had no drugs. He offered them $800 in quarters, which the assailants did not want. Instead, they took clothing and electronic equipment. The assailant who took the car keys returned and asked Haney how to operate the vehicle's alarm system. Finally, the assailants fled; Haney watched as they threw his belongings into the Tahoe and took off. Haney then called the police.

The police located the Tahoe three days later in the possession of Darnell Robinson a/k/a Darryl Robertson.[3] When Haney retrieved the vehicle the next day from the impound lot, he found a disposable camera inside. Haney had the film developed, and it contained photographs of the three men who robbed him. The photographs depicted the assailants, including Merritt, inside the Tahoe, wearing Haney's jewelry and clothing. In his photograph, Merritt is sitting in the driver's seat wearing Haney's black leather jacket. Haney described Merritt as the "most aggressive one . . . who was talking about he was going to shoot me, 'I'm going to shoot this mother-f___er' or something to those words."

Haney gave the photographs to Detective Perry Lawrence of the City of Atlanta Police Department. On January 2, 2002, Lawrence took Haney's statement. Haney identified Merritt as one of the men who robbed him. Lawrence testified that Haney never wavered in his identification of Merritt.

Merritt argues that the evidence recounted above does not support his conviction because Haney's in-court identification of him was less certain than his out-of-court identification. Haney testified at trial, which commenced on February 23, 2004, that when he first saw the photographs in December 2001, he was certain that Merritt was one of the robbers. Haney also testified that he was no longer "100 percent" certain of the identification because Merritt had been wearing a hood "tight on his face." Merritt thus contends, in essence, that the victim's in-court identification of him was not credible, warranting reversal of his conviction. "This argument fails because this Court does not weigh the evidence or judge the

---

[3] Merritt was tried jointly with Robinson and the third assailant, Wendell Mackey.

credibility of witnesses; both matters are exclusively for the jury."[4] In any event, Haney identified Merritt's co-defendants from their photographs as the other two perpetrators in the crimes, authorizing the jury to infer that Merritt aided in the commission of the crime.

> A person who intentionally aids or abets in the commission of a crime or intentionally advises, encourages, hires, counsels or procures another to commit the crime may be convicted of the crime as a party to the crime. Proof that the defendant shares a common criminal intent with the actual perpetrator may be inferred from conduct before, during, and after the commission of the crime. Evidence of the defendant's conduct before, during, and after the commission of the criminal act will authorize the defendant's conviction for commission of the criminal act if a jury could infer from the conduct that the defendant intentionally encouraged the commission of the criminal act.[5]

Finally, Merritt argues that his conviction cannot be sustained because none of the stolen property was recovered from him. Again, this argument fails. Haney identified a leather jacket stolen from him from the photograph of Merritt that was introduced into evidence without objection.[6] Accordingly, we find the direct and circumstantial evidence sufficient for any rational trier of fact to find Merritt guilty beyond a reasonable doubt of the charged offenses, at least as a party to those crimes.[7]

2. Merritt also argues that the trial court erred in denying his *Batson*[8] motion.

> The evaluation of a *Batson* challenge involves a three-step process: (1) the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven discriminatory intent.[9]

---

[4] (Citations and footnotes omitted.) Id. at 58 (1).

[5] (Punctuation and footnote omitted.) *Robertson v. State*, 277 Ga. App. 231, 235 (2) (626 SE2d 206) (2006).

[6] See generally *Wegman-Fakunle v. State*, 277 Ga. App. 198, 200 (1) (626 SE2d 170) (2006) (photographs of stolen medicine boxes properly admitted in shoplifting case).

[7] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[8] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[9] (Citation omitted.) *Flanders v. State*, 279 Ga. 35, 37 (2) (609 SE2d 346) (2005).

In the case at bar, Merritt made a *Batson* motion after the prosecutor used four of the state's six allotted peremptory strikes to excuse African-American jurors. The prosecutor did not utilize his last two strikes. The panel consisted of thirty whites, fifteen African-Americans, and three Asians. The jury was composed of eight whites, two African-Americans, and two Asians. Although the trial court did not find that the defense made a prima facie showing of racial discrimination, the court nevertheless required the prosecutor to explain its strikes. Thus, the threshold issue of whether Merritt established a prima facie case of discrimination is moot because the prosecutor offered purportedly race-neutral reasons for its strikes and the trial court ruled on the ultimate issue of purposeful discrimination.[10]

Although Merritt challenged four of the state's peremptory strikes at trial, he complains of only two on appeal, the strikes of jurors 6 and 29; thus, he has abandoned any claim of error regarding the trial court's *Batson* ruling as to the remaining jurors.[11] The prosecutor explained that he struck juror 6, an African-American woman, because she had a son who had been prosecuted for drug possession in Fulton County four or five years earlier; she also expressed reluctance to judge people. "The prior conviction of a family member is a sufficiently race-neutral reason to exercise a peremptory strike."[12]

The prosecutor explained that it struck juror 29, another African-American woman, because she had a cousin who had been arrested on drug-related charges in Fulton County three years prior to the trial at hand. Merritt points out, however, that juror 29 had stated that she did not follow her cousin's case and did not know what happened to him. Merritt also argues that the prosecutor did not strike a similarly situated white juror, no. 13. This juror, a white man, had been prosecuted for DUI in an unknown jurisdiction, but he expressed that he had been treated fairly by the police. This juror also reported that a motorcycle had been stolen from him once and that he was satisfied with the ensuing police investigation. Juror 29, who reported that her grandmother had been the victim of a burglary ten years earlier, did not respond positively concerning police treatment, although this juror stated that the crime would not affect her partiality.

The trial court concluded that the African-American jurors who

---

[10] *Bass v. State*, 271 Ga. App. 228, 231 (4) (609 SE2d 386) (2005).

[11] See *Crawford v. State*, 220 Ga. App. 786, 787 (1) (470 SE2d 323) (1996); Court of Appeals Rule 25 (c) (2) (claim of error not supported by citation of authority or argument is deemed abandoned).

[12] *Flanders*, supra.

were struck were not similarly situated to the white juror. The court also ruled that Merritt had failed to carry his burden of proving that the prosecutor's proffered explanations for the strikes were pretexts for discrimination. The trial court was influenced by the fact that the prosecutor had only used four of his six strikes and that he had accepted two African-American jurors. "Whether discriminatory intent exists is generally a matter for the trial court, as such finding rests largely upon assessment of the prosecutor's state of mind and credibility."[13] The trial court's findings in this regard "are entitled to great deference and will be affirmed unless clearly erroneous."[14] Given the deferential appellate standard, we cannot say that the trial court clearly erred in ruling that Merritt failed to carry the burden of proving that the prosecutor acted with discriminatory intent in exercising his peremptory challenges.[15]

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 16, 2009.

*Carl P. Greenberg*, for appellant.
*Paul L. Howard, Jr., District Attorney, David K. Getachew-Smith, Assistant District Attorney*, for appellee.

---

[13] (Punctuation and footnote omitted.) *Cowan v. State*, 279 Ga. App. 532, 534 (2) (631 SE2d 760) (2006).

[14] (Citations and punctuation omitted.) *Rakestrau v. State*, 278 Ga. 872, 874 (3) (608 SE2d 216) (2005).

[15] See *Turner v. State*, 267 Ga. 149, 153 (2) (476 SE2d 252) (1996) (opponent of challenge has burden of proving discriminatory intent).