## A11A0318. STEED v. THE STATE.
### (710 SE2d 696)

MIKELL, Judge.

Ellery Myron Steed, pro se,[1] appeals from the denial of his motion for new trial following his conviction by a Cobb County jury of driving under the influence of alcohol (less safe),[2] driving with a suspended license,[3] and improper lane change.[4] Prior to trial, Steed pled guilty to driving while in possession of an alcoholic beverage in an open unsealed container.[5]

"On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict and [Steed] no longer enjoys a presumption of innocence."[6] So viewed, the evidence was that, on July 11, 2009, at approximately 2:30 a.m., Marietta Police Officer Steven Miller was on patrol when he pulled up to a red

---

[1] Steed also represented himself at his trial.

[2] OCGA § 40-6-391 (a) (1).

[3] OCGA § 40-5-121 (a).

[4] OCGA § 40-6-123 (a).

[5] OCGA § 40-6-253 (b) (1) (B).

[6] (Citation, punctuation and footnote omitted.) *Boring v. State*, 303 Ga. App. 576, 577 (1) (694 SE2d 157) (2010).

light behind the automobile being driven by Steed. Steed was in the left of two left turn lanes; there were two motorcycles in front of Steed; and a Metro Ambulance was in the right lane next to Steed. As the light turned green, Steed accelerated and pulled in front of the ambulance without using his turn signal. The ambulance blew its horn and had to slow down rapidly. Miller activated his blue lights and pulled Steed over for the improper lane change. Miller identified himself and asked Steed for his driver's license. Steed fumbled with his wallet momentarily and then told Miller that his driver's license was suspended out of North Carolina.

Miller, who, in addition to his regular training, had taken extensive additional training to be recognized as a drug recognition expert and traffic accident reconstruction expert, recognized the odor of alcohol coming from Steed and noticed that his eyes were watery and bloodshot. Miller inquired if Steed had been drinking, and Steed said that he had been at a club and had had three drinks. Miller asked Steed to get out of his car and proceeded to conduct field sobriety tests, beginning with the horizontal gaze nystagmus test. According to Miller, Steed exhibited six of six clues indicating intoxication on this test. On the walk and turn test, Steed exhibited four of eight clues; on the one legged stand, Steed exhibited no clues.[7] At this point, Miller administered the alco-sensor test, but did not get a reading on the first administration. On the second administration, Steed registered positive for alcohol and, after finishing this test, Steed asked if he had passed. At this point, based on his observations, Miller arrested Steed for being less safe to drive and read him his implied consent rights, at which point Steed refused to take the breath or blood test. A second officer arrived to assist Miller, and he searched Steed's car, finding an open bottle of Bacardi rum on the passenger side floorboard.

1. In his first enumeration, Steed contends that the trial court erred in denying his motion in limine as to hearsay regarding his driving record and irrelevant statements regarding matters surrounding the status of his North Carolina driver's license.

"[T]he admission or exclusion of evidence which is objected to on the ground of relevancy lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion."[8]

(a) Steed contends that the trial court's denial of his motion in limine regarding records not properly authenticated was error. As

---

[7] While watching the dash camera video during trial, Miller noticed Steed wobble slightly on the one legged stand, which would be one clue.

[8] (Citation and punctuation omitted.) *Jones v. State*, 270 Ga. 25, 29 (8) (505 SE2d 749) (1998).

noted by the trial court, no such records had been put forward at that stage of the trial, and any objections to any such records tendered during trial could be made at that time. There was no error in the trial court's denying the motion at that point in the trial.

(b) Steed argues that the trial court improperly denied his motion in limine regarding his statements about his license being suspended in North Carolina because that portion of the audio on the dash camera video was unintelligible and the statements were irrelevant.

Admission of a recording of a conversation when part of it is inaudible is in the trial court's discretion.[9] Steed has shown no abuse of discretion here. Poor audio quality resulting in inaudible portions of a recording can be used to attack the weight and credibility of the recording, but it does not preclude its admissibility.[10] Here, the jury had full opportunity to evaluate whether this portion of the audio, in fact, was inaudible and what weight to give to any discernible statements made by Steed.

Regarding Steed's statements to Miller about his North Carolina license, under OCGA § 24-3-3, "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae." While it is in the discretion of the trial court to determine whether evidence is admissible under the res gestae rule, the question on appeal is "whether the factfinder would be authorized to believe the declarations were made without premeditation or artifice, and without a view to the consequences."[11]

We find that Steed's statements regarding his license's status in North Carolina satisfy this standard and these statements were admissible.[12]

2. Steed's second enumeration is that the trial court erred in overruling his objection to inflammatory hearsay uttered by Miller on cross-examination.

During Steed's cross-examination of Miller, the following exchange occurred:

Q. So then the GCIC is not an entity that can issue a driver's license, reinstate a driver's license, or suspend a driver's license? It just collects information as a database?

---

[9] *Heard v. State*, 257 Ga. App. 505, 507 (2) (571 SE2d 524) (2002).

[10] Id.

[11] (Citation and punctuation omitted.) *Wilbourne v. State*, 214 Ga. App. 371, 372 (1) (448 SE2d 37) (1994).

[12] *Heard v. State*, supra.

A. Well the Department of Driver Services does the suspensions.

Q. Right. Not the GCIC. So if — is there anything that you saw in that — in whatever you saw in your computer — there would be nothing that you can say here today that would suggest that my driver's license, or the suspension of my driver's license had preceded from a notice sent to me by the Department of Driver Services that my license would be suspended and date —

A. Since —

Q. I'm still asking the question.

A. Yes, sir. I'm sorry.

Q. — and setting a hearing for me to argue against the suspension? None of that would have shown on your computer: is that right?

A. On my computer it shows the current status, and then if there are any suspensions it lists them, what they are for — the violation date, the suspension date, and the service date, if the driver has been served, notice of the suspension. On my terminal, I observed eleven current suspensions and four of them had been served.

MR. STEED: Objection, Your Honor.

THE COURT: You asked the question. You opened the door, Mr. Steed.

[PROSECUTOR]: So if we could have him go ahead and answer his question.

THE COURT: You can finish it, because he interrupted you.

THE WITNESS: On my screen I observed eleven current suspensions and four of them had been served. Some suspensions require actual notice of suspension, and some require service at court.

"Induced error is impermissible. A party cannot claim error where he himself committed or invited the error."[13]

Steed's argument that this exchange is reversible error based on *Henderson v. State*[14] is unavailing. There, the expert on identification of bullets in a murder trial was asked on cross-examination why he did not measure the distance and depths of the grooves on the bullet.

---

[13] (Citations and punctuation omitted.) *Westmoreland v. State*, 192 Ga. App. 173, 176-177 (2) (b) (384 SE2d 249) (1989).

[14] 208 Ga. 73 (65 SE2d 175) (1951).

The witness responded by stating that the comparison microscope which he had used to examine other characteristics of the bullet "was the highest and best evidence."[15] The Supreme Court reversed because the answer given was "not only not in response to the question, but was a conclusion of law and a question that only the court could determine."[16]

"Although one may legitimately complain about *illegal testimony* which is not responsive to the question, one cannot take chances in propounding questions which may elicit damaging answers, otherwise inadmissible, and then demand a mistrial when such answer is given."[17]

Here, the answer given was responsive to the question asked and there was no error in the trial court's overruling of Steed's objection.[18]

3. Steed contests the legal sufficiency of the evidence of driving with a suspended or invalid license.

The offense of driving with a suspended license is shown by proof that the accused was driving, that his license was suspended, and that the accused had received actual or legal notice of the suspension.[19]

Here, there is no dispute that Steed was driving. Steed's own statement to Miller provided sufficient evidence that his license was suspended in North Carolina and that he had notice of the suspension.[20] The evidence was legally sufficient to prove that Steed was driving with a suspended license.

4. Steed's fourth enumeration is that the trial court committed plain error by refusing to allow him to cross-examine Miller using a certified copy of Steed's driving record from the Georgia Department of Driver Services.

As Steed began his cross-examination by showing Miller a certified copy of his driving record, the trial court instructed him that Miller had nothing to do with the Department of Driver Services and that Steed could introduce the exhibit during his portion of the case if he so chose. Steed voiced no opposition to this procedure and made no objection to not being allowed to cross-examine the officer using this document.

---

[15] Id. at 75.

[16] (Citations and punctuation omitted.) Id. at 75-76.

[17] (Citation omitted; emphasis supplied.) *Felker v. State*, 252 Ga. 351, 377 (11) (314 SE2d 621) (1984).

[18] We also note that no basis was given by Steed for his objection.

[19] *Wilson v. State*, 278 Ga. App. 420, 421 (629 SE2d 110) (2006); OCGA § 40-5-121.

[20] See *Griffin v. State*, 302 Ga. App. 807, 809 (692 SE2d 7) (2010) (Probationer's statement that his license was suspended was sufficient for revocation of probation.).

Apparently aware that he failed to raise at trial the objections raised here and therefore may not raise them for the first time on appeal,[21] Steed seeks to avail himself of the "plain error" rule to obtain review. The "plain error" rule, however, applies only "to death penalty cases, and other criminal cases in which the trial court violates OCGA § 17-8-57 [judge expressing or intimating opinion as to what has or has not been proved or as to the guilt of the accused]."[22]

Neither of these is applicable here, and we will not consider this error for the first time on appeal.[23]

5. Steed's enumerations 5, 6, and 8 all allege violations of OCGA § 17-8-57, and they will be addressed together.

That Code section provides that "[i]t is error for any judge in any criminal case . . . to express or intimate his opinion as to *what has or has not been proved or as to the guilt of the accused.*"[24] In order to violate this provision, "the trial court's comments must pertain to a disputed issue of fact."[25]

(a) During his opening statement, Steed stated that the field sobriety tests had an accuracy rating of only 65%.

At this point, the trial court stated:

THE COURT: Mr. Steed, I think you're going into areas that you don't have any evidence to substantiate. And the State's not saying anything, but the Court can't let you continue to do that. I don't believe you're going to call any witness that's going to give that. . . .

MR. STEED: Well, it's in this manual — it's in this training manual. The manual he's trained by says that. And if he's been trained with it, it should be admissible. I should be able to offer that.

In his fifth enumeration, Steed contends that the trial court's statement violated OCGA § 17-8-57.

First, we note that

the purpose of the opening statement is to give the jury and the court an outline of the evidence that the party anticipates presenting, whereas the purpose of the closing argu-

---

[21] *Earnest v. State*, 262 Ga. 494, 495 (1) (422 SE2d 188) (1992) ("Errors not raised in the trial court will not be heard on appeal.") (citation omitted).

[22] *Paul v. State*, 272 Ga. 845, 849 (3) (537 SE2d 58) (2000).

[23] *Earnest v. State*, supra.

[24] (Emphasis supplied.)

[25] (Citations omitted.) *State v. Gardner*, 286 Ga. 633, 634-635 (690 SE2d 164) (2010).

ment is to recount the evidence presented and suggest the conclusion demanded by that evidence. *The trial court has the right and duty to govern the scope of argument both before and after the presentation of evidence, and the proper range of argument is a matter within the [trial] court's discretion.*[26]

We do not find that the trial court's direction to Steed concerning the content of his opening statement was a comment on what had or had not been proven or his guilt or innocence.[27] Also, Steed continued, following this exchange with the trial court, to argue the issue of the 65% accuracy rate in his opening statement.

(b) In his sixth enumeration, Steed contends that the trial court's objections to his cross-examination of Miller was plain error and amounted to commenting on the evidence in violation of OCGA § 17-8-57.

Miller, during his direct examination, testified that another officer responded and searched Steed's car, finding a bottle of Bacardi rum on the passenger floorboard. The officer's search for, discovery of, and disposal of the contents of the bottle were also on the dash camera video shown to the jury.

During Steed's cross-examination, the following occurred:

MR. STEED: Officer, I want to go back to your testimony yesterday concerning a bottle of Bacardi that I believe you said your partner had found in the car.

OFFICER MILLER: Yes.

MR. STEED: Now, did you include in your testimony yesterday that that bottle of Bacardi was in a trash bag and a fast food bag?

OFFICER MILLER: No.

THE COURT: Excuse me. Mr. Steed, I'd like for you to move on. You've admitted to the open container charge. You've pled guilty to the open container charge. That's really not relevant. Thank you.

MR. STEED: Your honor, it is relevant in the sense that it was testified to during the trial, and I didn't get a chance to cross-examine on that.

---

[26] (Citation and punctuation omitted; emphasis supplied.) *English v. State*, 260 Ga. App. 620, 625 (4) (b) (580 SE2d 351) (2003). See also OCGA § 17-8-75 (trial court's duty to prevent counsel or party from making statements of prejudicial matters not in evidence during argument).

[27] See *Branscomb v. State*, 272 Ga. App. 700, 701 (1) (613 SE2d 222) (2005).

THE COURT: You've pled guilty prior to the jury being impaneled. I'd like for you to move on. Thank you.

At this point, Steed voiced no further objection and continued with his cross-examination on other matters.

As acknowledged in his brief, Steed does not dispute that he pled guilty to the open container charge prior to trial. Therefore, the trial court's statements of this fact were not in violation of OCGA § 17-8-57.[28]

(c) In his eighth enumeration, Steed contends that the trial court erred when it offered objections to relevant evidence even when the state expressly stated that it had no objection and further improperly commented on that evidence in violation of OCGA § 17-8-57.

During the cross-examination of Miller, Steed produced two still photos of him in the back seat of Miller's patrol car. The state initially objected to them on the ground that Steed had not laid a proper foundation. Following additional questioning of Miller regarding the photos, the state withdrew its objection. The following then occurred:

THE COURT: Well, the difficulty there that I have with that, Mr. Steed, is that that is a different type of medium than what's up here. And he [Miller] didn't make that picture. We don't know how you — where you came about with it.

MR. STEED: [The prosecutor] has no objection.

THE COURT: That was her prior objection. And she —

MR. STEED: She doesn't have enough.

PROSECUTOR: Your honor, we'll just argue those in closing.

THE COURT: Okay. All right. Okay, it's admitted.

We do not find this statement to be a violation of OCGA § 17-8-57. As held by the Supreme Court in reversing *Gardner v. State*,[29] relied upon here by Steed, the following exchange similarly did not violate the statute:

THE COURT: Prove venue. Did you prove venue?

THE STATE: I have not as of yet.

---

[28] Id.

[29] 296 Ga. App. 792, 793 (2) (676 SE2d 258) (2009).

THE COURT: Why don't we go ahead and do that before we forget it?[30]

Therefore, we find no error in the trial court's denial of Steed's motion for new trial based on violations of OCGA § 17-8-57.

6. In his seventh enumeration, Steed argues that the trial court committed plain error in refusing to permit him to cross-examine Miller as to the odor of alcohol noticed by Miller based on Miller's own drinking habits.

As stated previously, the plain error rule is applicable only to death penalty cases and alleged violations of OCGA § 17-8-57. Therefore, Steed's failure to object following the trial court's finding that his inquiry regarding Miller's drinking habits was not relevant precludes our review of this enumeration.[31]

7. Steed's ninth and tenth enumerations of error are that the trial court erred in denying his motion to suppress the field sobriety tests and his motion to dismiss for lack of probable cause. He urges us to apply the de novo standard of review.

We agree that the trial court's application of the law to the facts is subject to de novo review if the facts are stipulated, or if the critical facts do not depend on the testimony of witnesses who are subject to cross-examination. However, a trial court's ruling on a motion to suppress frequently involves a mixed question of fact and law. *When the outcome of a motion to suppress depends on the credibility of the witnesses or on disputed facts, and the trial court has not committed an error of law, the court's ruling will not be disturbed on appeal.* As a reviewing court, we must accept the factual and credibility determinations and inferences drawn by the trier of fact . . . as long as there is evidence in the record to support the trial court's findings.[32]

Where, as here, the underlying facts support conflicting inferences as to whether the defendant committed an unsafe lane change, we apply a clearly erroneous standard of review and defer to the trial court's finding on the issue.[33] Therefore, we find no error in the trial court's denial of Steed's motion to suppress[34] and motion to dismiss

---

[30] *State v. Gardner*, supra at 633-635.

[31] *Earnest v. State*, supra.

[32] (Citation and punctuation omitted; emphasis supplied.) *Slayton v. State*, 281 Ga. App. 650, 650-651 (1) (637 SE2d 67) (2006).

[33] See *State v. Goode*, 298 Ga. App. 749, 750 (681 SE2d 199) (2009).

[34] Steed's motion to suppress was also grounded on his contention that there was

for lack of probable cause.

*Judgment affirmed. Smith, P. J., and Dillard, J., concur.*

DECIDED MAY 11, 2011 — 

Ellery Steed, *pro se.*
Barry E. Morgan, *Solicitor-General*, for appellee.

insufficient evidence of an improper lane change. We need not further address this issue.