**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 15, 2012**

# In the Court of Appeals of Georgia

A12A1400. GORMAN et al. v. THE STATE.

PHIPPS, Presiding Judge.

After being tried together, Bryan Garrard Gorman ("Garrard Gorman") and his nephew Bryan Jude Gorman ("Jude Gorman") were convicted of burglary.[1] They filed a single notice of appeal from the order denying their motions for new trial. In their joint brief, they contend that the trial court erred by denying their motions for directed verdicts of acquittal, commenting on the evidence, limiting cross-examination by defense counsel, and denying their motion for mistrial after a witness gave testimony

---

[1] Johnny Gorman, who is Garrard Gorman's son, was tried for burglary along with Garrard Gorman and Jude Gorman; Johnny Gorman was found not guilty. Garrard Gorman was also convicted of giving a false name; that conviction is not at issue in this appeal.

that the court had previously ruled inadmissible. Because no reversible error has been shown, we affirm.

1. OCGA § 16-7-1 (a) pertinently provides that a person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another.[2] The indictment alleged that Garrard Gorman and Jude Gorman, acting together and as parties to the crime, unlawfully, without authority and with the intent to commit a theft therein, entered the dwelling house of another. Garrard Gorman and Jude Gorman contend that the trial court erred in denying their motions for directed verdicts of acquittal[3] because the state failed to prove identity and intent to commit theft.

> A motion for a directed verdict of acquittal should be granted only when there is no conflict in the evidence and the evidence demands a verdict of acquittal as a matter of law; a challenge to the sufficiency of the

---

[2] We apply the version of OCGA § 16-7-1 which was in effect in January 2010, the time of the offense. OCGA § 16-7-1 was amended "effective July 1, 2012, and shall apply to offenses which occur on or after that date. Any offense occurring before July 1, 2012, shall be governed by the statute in effect at the time of such offense." Ga. L. 2012, p. 899, 949, § § 3-1, 9-1.

[3] At trial, one attorney represented both Garrard Gorman and Johnny Gorman; Jude Gorman was represented by separate counsel.

2

evidence in connection with the denial of a directed verdict of acquittal is evaluated based on the standard set forth in *Jackson v. Virginia*.[4]

Viewed in the light most favorable to the prosecution, the evidence showed the following. On January 9, 2010, a homeowner heard a knock on the front door of her house. The homeowner, who was 83 years old, opened the door. A man at the door told the homeowner he was there to "run wires" in her house. The homeowner told him that she did not need any wiring done. But the man entered the house, as did a second, younger man. The homeowner had not given either man permission to enter her house. The younger man entered her bedroom and looked behind her furniture and inside her dresser. While the men were inside, she stepped outside and telephoned the police, reporting that someone was attempting to rob her. The men then left. Kitchen cabinets and a dresser drawer were open, but nothing had been taken. During the phone call, the homeowner told police that the men had just left in a black Jeep.

---

[4] *Bodiford v. State*, 305 Ga. App. 655 (700 SE2d 648) (2010) (citation and footnote omitted) citing *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979) (on review of the sufficiency of the evidence to support a criminal conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt).

3

After hearing the dispatch, a police officer stopped a blue Jeep with, he believed, two men inside, coming from the direction of the homeowner's house; a third man, Johnny Gorman, was also in the vehicle. The officer observed that the vehicle had two license plates (a Tennessee dealership tag covered an Ohio plate). The driver, Garrard Gorman, gave the officer a driver's license bearing the name of another person. A second officer, a sergeant, also arrived at the scene of the traffic stop.

The officer and the sergeant placed the three men in their patrol vehicles and drove to the homeowner's house, where the homeowner immediately identified Garrard Gorman and Jude Gorman as the men who had been in her house.[5] Garrard Gorman and Jude Gorman, who had been advised of their *Miranda* rights, told the officer they had gone to the house to install wiring. At trial, the homeowner identified Garrard Gorman as the older man with whom she had spoken at her house, and the man sitting next to him at trial[6] as possibly the younger man. At trial, all three

---

[5] Appellants have not, before the trial court or this court, challenged the identification method utilized by the police.

[6] The transcript does not reflect clearly who was seated next to Garrard Gorman when the homeowner gave this testimony.

defendants admitted that they had been at the homeowner's house on the date of the incident; they testified that they were there to solicit house painting work.

(a) *Identity*.

"[I]dentity is a question for the trier of fact; where a witness identifies a defendant, the credibility of the witness making that identification is not to be decided by this Court."[7] The evidence was sufficient for a jury to find that Garrard Gorman and Jude Gorman were the men who committed the burglary.[8]

(b) *Intent*.

Whether a person who is accused of burglary entered another's residence or other building with the intent to commit a theft is a matter for the jury to say, under the facts and circumstances proved. As a general rule the state must, of necessity, rely on circumstantial evidence in proving intent. And the fact that the defendant may have failed in accomplishing his apparent purpose does not render a finding of burglary improper. . . .A jury may reject a defendant's explanation for

---

[7] *Jones v. State*, 285 Ga. App. 121, 123 (1) (645 SE2d 608) (2007) (punctuation and footnote omitted). See *Merritt v. State*, 300 Ga. App. 515, 516-517 (1) (685 SE2d 766) (2009) (rejecting appellant's challenge to the sufficiency of the evidence based on witness's in-court identification being less certain than his out-of-court identification, because appellate court does not weigh evidence or judge the credibility of witnesses).

[8] See *Jones*, supra; *Brown v. State*, 277 Ga. App. 169, 170-171 (1) (626 SE2d 128) (2006).

his unauthorized entry where that explanation is inconsistent with other direct and circumstantial evidence.[9]

Moreover, "criminal intent may be inferred from presence, companionship, and conduct before, during and after the offense."[10] In this case, the evidence authorized the jury to find that Garrard Gorman and Jude Gorman intended to commit a theft when they entered the house.[11]

Accordingly, there was sufficient evidence from which a rational trier of fact could have found Garrard Gorman and Jude Gorman guilty of being parties to the crime of burglary.[12]

2. Garrard Gorman and Jude Gorman contend that the court violated OCGA § 17-8-57[13] by commenting on the evidence "in the jury's presence on the disputed

---

[9] *Long v. State*, 307 Ga. App. 669, 671 (1) (705 SE2d 889) (2011) (citations and punctuation omitted).

[10] *Wood v. State*, 300 Ga. App. 674, 676 (686 SE2d 319) (2009) (citation and punctuation omitted).

[11] See *Long*, supra at 671-672 (1).

[12] See id.; *Jones*, supra; *Wood*, supra; *Brown*, supra.

[13] OCGA § 17-8-57 pertinently provides that "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused."

6

identifications." However, they fail to delineate in their brief the purported error by reference to the record, as required by Court of Appeals Rule 27. Indeed, they fail to identify the comment at issue with any particularity, stating in that regard only that: the "specific comment as to Johnny J. Gorman's identification (or not) allowed the State to proceed as if the guilt of both Bryan Gorman's [sic] were foregone conclusions." Notably, in the "Statement of Material Facts" section of their brief the appellants include an excerpt from the trial transcript referencing an identification as to "Bryan Jude Gorman"; but neither that excerpt nor the corresponding section of the trial transcript includes a "specific comment as to Johnny J. Gorman's identification" by the trial judge. Thus, it is not clear what comment forms the basis for the appellants' complaint or that such comment constituted an expression or intimation of the trial judge's opinion as to what had or had not been proved as to Garrard Gorman's or Jude Gorman's guilt.[14] The burden is on the party asserting error to show it affirmatively by the record.[15] It is not the function of this court to cull the record on

---

[14] See id.

[15] *Melton v. State*, 222 Ga. App. 555, 559 (6) (474 SE2d 640) (1996).

behalf of a party in search of error.[16] Garrard Gorman and Jude Gorman have not met their burden of showing error by the record.

3. Garrard Gorman and Jude Gorman contend that the trial court abused its discretion in denying their motion for mistrial after the officer testified regarding a statement Johnny Gorman had made to the sergeant, when the trial court had ruled earlier that the statement was not admissible. The contention presents no basis for reversal.

In a *Jackson v. Denno*[17] hearing, the officer who initiated the traffic stop testified that Johnny Gorman had told the sergeant that he and the other men were at the house to paint. Defense counsel asked the officer whether he had reviewed the incident report the sergeant had authored; the officer replied that he had. Defense counsel then asked the officer whether the sergeant's report indicated that the "uncle and nephew" (Garrard Gorman and Jude Gorman) had said that they were at the house to paint, and that the "son" (Johnny Gorman) had said he was there to "run

---

[16] See *Westmoreland v. State*, 287 Ga. 688, 696-697 (10) (699 SE2d 13) (2010); *State v. Stallworth*, 293 Ga. App. 368 (1) (667 SE2d 147) (2008); *Melton*, supra.

[17] 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

wires"; the officer replied, "Right." During the hearing, the sergeant also testified as to the contents of his report, confirming that he had stated in the report that Johnny Gorman said the men were there to do wiring. The court ruled that Johnny Gorman's statement to police was not admissible because he had not been advised of his *Miranda* rights; conversely, the court ruled that statements Garrard Gorman and Jude Gorman had made to police were admissible.

Later, at trial, the following transpired. On cross-examination, defense counsel asked the officer a series of questions regarding his previous testimony as to what Garrard Gorman and Jude Gorman had told the homeowner, the officer, and the sergeant were their reason(s) for being at the residence. After the officer answered those questions, defense counsel asked him: "It's in [the sergeant's] report that [the uncle] . . . states that he was there to do painting; isn't that true?"[18] The officer responded, "Just give me a second here. Yes, there was. However, Johnny said that he was there to run some wires." Defense counsel moved for a mistrial, which the court denied, stating that the defense had opened the door to the testimony.

> [W]hether to grant a mistrial is a matter within the discretion of the trial court, and that discretion will not be interfered with on appeal unless it

[18] Garrard Gorman was Jude Gorman's uncle.

is apparent that a mistrial is essential to the preservation of the right to a fair trial.[19]

"Although one may legitimately complain about illegal testimony which is not responsive to the question, one cannot take chances in propounding questions which may elicit damaging answers, otherwise inadmissible, and then demand a mistrial when such answer is given."[20] Here, defense counsel took chances by asking the officer a series of questions regarding statements Garrard Gorman and Jude Gorman had made to various individuals to explain why they were at the residence. Defense counsel even asked the officer about the contents of the sergeant's report on that issue (albeit about "the uncle[']s" statement), notwithstanding the fact that the report about which counsel inquired included Johnny Gorman's statement regarding their reason for being there.

Furthermore, "[t]he mistrial decision must be based on the surrounding circumstances in their totality. The trial court is in a peculiarly good position to

---

[19]*Jones v. State*, 277 Ga. 36, 40 (6) (586 SE2d 224) (2003) (citation and punctuation omitted); *Moore v. State*, 310 Ga. App. 106, 107 (1) (712 SE2d 126) (2011).

[20] *Felker v. State*, 252 Ga. 351 Ga. 351, 377 (11) (314 SE2d 621) (1984) (citation omitted); *Steed v. State*, 309 Ga. App. 546, 550 (2) (710 SE2d 696) (2011).

observe the jurors, the witnesses, and the attorneys in order to evaluate the extent of the prejudice" resulting from the injection of inadmissible evidence.[21] Having reviewed the record, including the testimony at issue (to wit, the reference to Johnny Gorman's statement that the men were at the house to do wiring), we conclude that the trial court did not abuse its discretion in denying the appellants' motion for mistrial.[22]

4. Garrard Gorman and Jude Gorman contend that the trial court improperly limited their cross-examination regarding Johnny Gorman's statement to police, in that the court "did not allow [them] to address the clear conflict in the officers' testimony and prevented 'through and sifting cross-examination.'"

However, defense counsel moved to have the statement excluded. "One cannot complain of a result he procured or aided in causing, and induced error is not an appropriate basis for claiming prejudice."[23] Moreover, when the trial court granted the defendants' motion to suppress the statement, the court announced that the

---

[21] *Bentley v. State*, 262 Ga. App. 541, 543 (3) (586 SE2d 32) (2003) (footnotes and punctuation omitted).

[22] See generally *Jones*, 277 Ga. 36, supra at 40 (6).

[23] *Borders v. State*, 285 Ga. App. 337, 340 (2) (646 SE2d 319) (2007) (citation and punctuation omitted).

defendants would not be able to use the excluded statement to cross-examine the officers. The defendants did not object or take exception to the ruling. "A party can not during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later."[24] Thus, the issue has not been preserved for our review.[25]

*Judgment affirmed. Ellington, C. J., and Dillard, J., concur.*

---

[24] *White v. State*, 231 Ga. App. 290, 294 (5) (201 SE2d 436) (1973) (citations and punctuation omitted).

[25] See generally *Smith v. State*, 280 Ga. 161, 162 (2) (625 SE2d 766) (2006) (appellant cannot complain on appeal of trial court's ruling to not allow jurors to rehear certain evidence, where he offered no objection at trial); *Moore v. State*, 207 Ga. App. 673, 675 (3) (428 SE2d 678) (1993) (issue not preserved for appellate review where appellant asserted at trial her right to cross-examine a witness about a particular matter, and court stated it would defer ruling on the issue, but appellant did not later renew request or voice objection); see also *Anthony v. State*, 236 Ga. App. 257, 258 (1) (511 SE2d 612) (1999).