**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 26, 2022**

# In the Court of Appeals of Georgia

A21A1672. BROWN v. THE STATE.

BROWN, Judge.

Following a jury trial, Frank Brown was convicted of statutory rape. He appeals his conviction and the trial court's denial of his amended motion for new trial, contending that insufficient evidence supports his conviction and that he received ineffective assistance of counsel. We find no error and affirm.

Viewed in the light most favorable to the verdict, see *Allen v. State*, 361 Ga. App. 300, 301 (864 SE2d 149) (2021), the evidence presented at trial showed that the victim,14-year-old D. H., went to live with an older half-sister, Santresia, after being shuffled between family members. D. H. testified that her parents had issues with drugs, that the aunt she had been living with beat her, and that she thought Santresia had a home where she could stay. However, Santresia had been living out of motels

with her two small children and two other sisters, Shaniqua and Sharmaine, and exchanging money for sex.

D. H. began living with them in motels, and after a few months, D. H. "was put into the sex game by [Santresia]." D. H. testified that she went along with it because Santresia reminded her that she was alone and had nowhere else to go and that her nieces and nephews would have no where to sleep. When D. H. would tell Santresia she wanted to stop, Santresia would hit her. According to D. H., Santresia advertised D. H.'s "services" on Craigslist and Backpage and interested customers would call a phone number to speak with Santresia and arrange a "date." In the ads, D. H. went by the name of "Brandy," and her age was advertised as 18. D. H. testified that she sometimes would tell the men who showed up to have sex with her that she was only 15 years old in hopes that they would leave, "[b]ut most . . . didn't care . . . they will still . . . have sex with a 15-year-old."

DeKalb County police began a sting operation after seeing "Brandy's" ad, and an undercover officer set up a "date" for sex over the phone with D. H. He came to the motel, entered D. H.'s room, and handed over money before police entered. D. H. testified that she knew when talking to the man on the phone that he was law enforcement, but she gave him the address because she wanted help. D. H. showed

police phone numbers in her cell phone that were associated with customers. D. H. also picked out two men from photographic lineups as ones who had sex with her. One of the men was Brown.

After police interviewed D. H., they set up a "reverse operation," in which an undercover female agent posed as D. H. and used D. H.'s cell phone to communicate with potential customers. While the agent had D. H.'s phone, Brown texted D. H., asking if she was "workn" and if he could have a "Qv" or a "quick visit." The undercover agent responded to the texts and gave Brown a hotel room number. When Brown arrived, he was arrested.

Phone records showed that the number associated with Brown's cell phone had texted and called D. H.'s cell phone number multiple times, including two days prior to police discovering D. H. In addition, D. H.'s phone number was saved in Brown's phone as "Brandy." Brown was interviewed by police and a recording of the interview was played during the trial. Brown admitted having sex with a girl called "Brandy." According to one detective, the description Brown gave in the interview "fit" D. H. who was "a distinct individual from her sisters." The detective testified that D. H. was "distinctively different" from the other sisters because they were

mildly obese and D. H. had an athletic build. During the trial, D. H. identified Brown as one of the men she had informed of her age, but who nonetheless had sex with her.

Brown was charged with pandering for a person under 18 and statutory rape. The jury found Brown guilty of statutory rape, but not guilty of the pandering charge. Brown filed a motion for new trial, and the trial court denied the motion, as amended. This appeal followed.

1. Brown challenges the sufficiency of the evidence, contending that there is insufficient evidence to show that he had sex with D. H. rather than her older sister, Sharmaine. We disagree.

> When we consider the sufficiency of evidence, the defendant no longer enjoys a presumption of innocence, and the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. Critically, our review leaves to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be made from the evidence.

(Citations and punctuation omitted.) *Reid v. State*, __ Ga. App. ___ (1) (865 SE2d 245) (2021).

During Brown's interview with police, he stated that the girl he had sex with had apologized about broken glass on the floor from a fight with her boyfriend. Santresia testified that there once was broken glass in the motel room after Sharmaine fought with her boyfriend. As to the identification, the detective who interviewed D. H. testified that when D. H. identified Brown in the photographic line-up, she stated that he looked familiar, but she could not remember if she had sex with him. Brown argues that the evidence was insufficient based on the uncertainty of D. H.'s out-of-court identification of him as well as the testimony of Santresia, which supported Brown's defense theory that he had slept with Sharmaine and not D. H.

Brown's arguments challenge D. H.'s credibility as a witness and the proper weight to afford her testimony, but this Court "does not reweigh evidence or resolve conflicts in testimony." (Citation and punctuation omitted.) *Cox v. State*, 306 Ga. 736 (1) (832 SE2d 354) (2019). Indeed, "[t]he fact that the jury resolved the conflicts in the evidence or credibility of the witnesses adversely to [Brown] does not render the evidence insufficient." (Citation and punctuation omitted.) *Redding v. State*, 354 Ga. App. 525, 532 (1) (c) (841 SE2d 192) (2020). Moreover, the uncertainty of D. H.'s out-of-court identification does not warrant the reversal of Brown's conviction. See *Merritt v. State*, 300 Ga. App. 515, 516-517 (1) (685 SE2d 766) (2009) (rejecting

5

appellant's challenge to the sufficiency of the evidence based on witness' in-court identification being less certain than his out-of-court identification, because appellate court does not weigh evidence or judge the credibility of witnesses). See also *Gorman v. State*, 318 Ga. App. 535, 537 (1) (a) (734 SE2d 263) (2012) ("where a witness identifies a defendant, the credibility of the witness making that identification is not to be decided by this Court") (citation and punctuation omitted).

To the extent Brown contends that the evidence was insufficient to corroborate D. H.'s allegations of statutory rape, this argument also is without merit. "A person commits the offense of statutory rape when he or she engages in sexual intercourse with any person under the age of 16 years and not his or her spouse, provided that no conviction shall be had for this offense on the unsupported testimony of the victim." OCGA § 16-6-3 (a).

> The quantum of corroboration needed in a statutory rape case is not that which is in itself sufficient to convict the accused, but only that amount of independent evidence which tends to prove that the incident occurred as alleged. Slight circumstances may be sufficient corroboration, and ultimately the question of corroboration is one for the jury.

(Citation and punctuation omitted.) *Hill v. State*, 331 Ga. App. 280, 282 (1) (a) (769 SE2d 179) (2015). Here, D. H.'s testimony that Brown had sex with her was

6

corroborated by the phone calls and text messages to D. H.'s phone from Brown's phone number; D. H.'s phone number being stored in Brown's phone as "Brandy," the name associated with D. H.'s ads for her "services"; Brown's own admission that he had sex with a girl named "Brandy"; and Brown's description of the girl he had sex with, which matched D. H.'s appearance rather than that of her sisters. This evidence is sufficient corroboration.

2. Brown contends that his trial counsel was ineffective in failing to move for a mistrial after a State's witness improperly commented on Brown's guilt. Again, we disagree.

> In evaluating claims of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984), which requires a defendant to show that his trial counsel's performance was deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. Additionally, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption. Lastly, unless clearly erroneous, we will uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed de novo.

(Citation and punctuation omitted.) *Clarke v. State*, 356 Ga. App. 580, 592 (3) (848 SE2d 192) (2020). "In order to succeed on this ineffectiveness claim, [Brown] must show that if his counsel had moved for a mistrial, it would have been an abuse of discretion for the trial court to deny it." (Citation and punctuation omitted.) *Miller v. State*, 359 Ga. App. 380, 385 (2) (857 SE2d 830) (2021).

During the defense's cross-examination of the detective who interviewed Brown, the following exchange occurred:

> [Counsel]: So you also threw out this idea of DNA while you were talking to him. Do you remember talking about DNA?
> [Detective]: I did.
> [Counsel]: You dangled that DNA question out there, didn't you?
> [Detective]: I think that's what made him change his story.
> [Counsel]: Was there any DNA of Frank Brown ever found regarding any of this?
> [Detective]: I'm not sure. I didn't follow up on the DNA side.
> . . .
> [Counsel]: Why did you mention DNA?
> [Detective]: Because most of the time if a suspect or a person know[s] that they have actually had physical contact with someone, they know there is a possibility of DNA being there. And it's just another — that wasn't deceitful. That is actual facts so. Knowing that we were going to do a sexual assault kit, it very well could be possible Mr. Brown's DNA could be found in that kit.

8

Shortly after, defense counsel asked the detective: "[O]nce Mr. Brown gave the statement that he did have sex with someone, you were satisfied at that point, right?" The detective replied:

> I wasn't. I wasn't satisfied until he gave me convincing information that he wasn't changing the story to meet some need. I didn't give him any promise of any form of benefit for him to change his story. What I told — well, basically he changed his story based on a few things. Pretty much got caught up in the lie and he knew that if we did, in fact, go home and check his computer, it would show that communication and if we did, in fact, do a DNA sample, he would probably be in the midst of that sample. . . .

Defense counsel then interrupted and objected to the testimony on the basis that there was "no foundation for [the detective] to make a statement like that." After some back and forth with the trial court, the court found that the testimony presumed facts not in evidence and instructed the jury to "disregard that statement." Counsel then moved on. Brown asserts that the detective improperly commented on his credibility because he implied he was lying and opined on Brown's guilt, and that trial counsel's failure to pose a timely and accurate objection or move for a mistrial was harmful and prejudicial because "[t]he sole issue at . . . trial was whether to believe his statements that he had not had sex with [D. H.]"

9

"Whether to grant a mistrial is within the trial court's discretion, which an appellate court will not disturb unless there is a showing that a mistrial is essential to the preservation of the right to a fair trial." (Citation and punctuation omitted.) *Rosser v. State*, 308 Ga. 597, 602 (2) (842 SE2d 821) (2020). Under these circumstances, Brown has not carried his burden of showing that defense counsel performed deficiently. Counsel objected to the testimony, and the trial court sustained the objection and gave an appropriate curative instruction. "[J]uries are presumed to follow curative instructions in the absence of proof to the contrary." *Jones v. State*, 305 Ga. 750, 755 (3) (827 SE2d 879) (2019). Moreover, Brown has not shown that a mistrial would have been granted had counsel requested one. "Because the trial court would have acted within its discretion in denying a motion for mistrial, the failure of [Brown's] trial counsel to make a motion that the court was authorized to deny does not establish ineffective assistance by that counsel." (Citation and punctuation omitted.) *Hill v. State*, 310 Ga. 180, 190 (7) (850 SE2d 110) (2020) (trial counsel not ineffective in failing to ask for a curative instruction or mistrial based on testimony that defendant contended was "improper evidence of bad character" where counsel objected to testimony, trial court sustained objection, and instructed jury to disregard testimony, and defendant failed to show that a mistrial would have been

granted had counsel requested one). See also *Allen v. State*, 277 Ga. 502, 503 (3) (a) (591 SE2d 784) (2004).

*Judgment affirmed. Doyle, P. J., and Reese, J., concur.*