**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 26, 2013**

# In the Court of Appeals of Georgia

A12A2149. CASTANEIRA v. THE STATE.

BRANCH, Judge.

Ryan Allen Castaneira was tried by a Fayette County jury and convicted of criminal attempt to commit child molestation,[1] criminal attempt to entice a child for indecent purposes,[2] computer pornography and child exploitation,[3] obscene Internet contact with a child,[4] and misdemeanor possession of marijuana.[5] He now appeals from the denial of his motion for a new trial, asserting that the trial court erred when

---

[1] OCGA § 16-4-1; OCGA § 16-6-4 (a) (1).

[2] OCGA § 16-4-1; OCGA § 16-6-5 (a).

[3] OCGA § 16-12-100.2 (d) (1).

[4] OCGA § 16-12-100.2 (e) (1)

[5] OCGA § 16-13-2 (b).

it failed to instruct the jury on his sole defense of mistake in fact. Castaneira further contends that the evidence was insufficient to support his convictions for criminal attempt to commit child molestation and criminal attempt to entice a child for indecent purposes, and that he received ineffective assistance of counsel. Castaneira also claims that the trial court erred in admitting certain evidence in violation of the best evidence rule, in failing to apply the applicable sentencing statute, and in failing to merge his convictions for criminal attempt to commit child molestation and criminal attempt to entice a child for indecent purposes. We find no error in the denial of Castaneira's motion for a new trial, and we therefore affirm that order. Finally, we find that the trial court did not err when it failed to merge Castaneira's convictions for criminal attempt to commit child molestation and criminal attempt to entice a child for indecent purposes.

On appeal from a criminal conviction, the defendant is no longer entitled to a presumption of innocence and we therefore construe the evidence in the light most favorable to the jury's guilty verdict. *Martinez v. State*, 306 Ga. App. 512, 514 (702 SE2d 747) (2010). So viewed, the record shows that Detective Heather Jones is an officer with the Peachtree City Police Department whose job is to investigate internet crimes against children. In September 2006, Detective Jones created an account on the

Adult Friend Finder ("AFF") website.[6] Detective Jones's fictitious profile listed her name as April Thompson, her age as 31, and her marital status as single. The profile also described "April" as "a sweet Georgia girl" looking for men "for a discreet relationship."

On September 15, 2006, Detective Jones logged onto the AFF website as April and entered one of the site's chat rooms. She was then contacted via instant message by another website user, later identified as Castaneira, using the name "doinitsidewayzz." During their conversation, Castaneira asked April's age, and she replied that she was only 15 and asked, "Is that okay?" Castaneira responded, "Oh, my, not sure that would be legal." He nevertheless continued to chat with April, telling her that he "was looking for something a bit casual, nothing serious, but still having fun physically." Castaneira also asked April for her picture, and in return she asked for one of him. When they were unable to exchange pictures because of technical problems, they agreed to log off the website and use a different instant messaging service. April and Castaneira continued their chat a few minutes later, using the different service, at which time Detective Jones, who was then 29 years old, sent

---

[6] Although the website states that no one under the age of 18 is permitted to access it, the site does not require that a user provide proof of their age.

Castaneira a current picture of herself, claiming it was a picture of the 15-year-old April. Jones also received two pictures that Castaneira sent to April; one of those pictures was a head shot of Castaneira, and the other was a photo of his exposed genitalia.

During the conversation that followed the exchange of photographs, Castaneira asked about April's living situation and if she had "strict parents." She responded that she had just recently moved to Georgia from North Carolina, that she lived with her aunt, and that she was home schooled together with her cousins. When Castaneira asked if April's aunt would let him take her out, she replied "we don't have to tell her"; Castaneira then stated "I like the way you think." The two then discussed meeting in person, with Castaneira asking if April would be available to "hang out" for "at least an hour or two." Castaneira also suggested the possibility that the two could go to a hotel. April and Castaneira then discussed the fact that April was a sexually inexperienced virgin, with Castaneira suggesting that he could perform oral sex on her.

Two days later Castaneira had a second online conversation with April, and on September 18 they had a third. April had to pause the third conversation at least twice, first telling Castaneira that her aunt was calling her and then reporting that her aunt

4

kept coming into the room. During that conversation, Castaneira mentioned the possibility of meeting April later that week. After some discussion, they agreed to meet on the night of Wednesday, September 20, with April telling Castaneira that she would need to be home by "9:30 or so." Castaneira then stated, "well, depending on how much time we have, we may not be able to use the hotel room to its full potential . . . but we could still have a lot of fun there." He later told April that "since we won't have all that much time, maybe we can just start slowly and plan for a different day to get a hotel room." Castaneira then stated that they "could just park somewhere and fool around a little." In response, April suggested meeting at a Kroger store near her, noting that there was a nearby park that few people frequented. Castaneira replied, "as long as it [our presence] isn't suspicious [so] that a cop going by would stop." The two then agreed to meet between 7:30 and 8:00 p.m. on Wednesday at a specific Kroger in Peachtree City.

Castaneira chatted with April again on September 19, the day before their planned meeting, and told her he had driven to Peachtree City that day to locate the Kroger. He also asked her how she would get to Kroger, and she told him that a friend's brother would drop her off. Castaneira instructed April to wait for him outside the grocery store and told her he would be driving a black car.

5

On September 20, Castaneira had another online conversation with April and asked her where he would be dropping her off after they were through "hanging out"; April replied that he could just drop her off at the Kroger. When April indicated that she was nervous about her first sexual encounter, Castaneira told her, "[w]e may not go all the way tonight, but I promise to make you feel good." He then discussed the possibility of performing oral sex and digitally penetrating her, telling April, "I think you would really like [those things]."

That evening, Detective Jones, accompanied by other undercover officers, went to the designated meeting place and stood in front of the Kroger store. She was dressed as a young girl, wearing shorts, a t-shirt, and a baseball cap, and carrying a backpack. Shortly after 8:00 p.m., a black car drove past Detective Jones and from the picture he had sent, she recognized the driver as Castaneira. Castaneira parked and he and Detective Jones walked towards each other. Detective Jones asked Castaneira if he was Ryan; when he responded affirmatively and then said, "April," she arrested him. The police obtained a search warrant for Castaneira's car, from which they recovered a bottle of lubricant, a condom, a laptop computer, and a small amount of marijuana.

Castaneira's defense was that he lacked the requisite intent to commit the crimes at issue, because he did not believe he was in contact with or going to meet a 15-year old-girl. Specifically, evidence was introduced showing that Castaneira and his wife met on the AFF website and that they were "swingers" – i.e., they were a couple who, as a couple, enjoyed participating in sexual activities with other couples. Both Castaneira and his wife testified that they liked to participate in sexual "role play," and that they advertised on the AFF website, among others, looking for other couples with similar interests. Thus, Castaneira testified, he did not go to the Kroger looking for an adolescent girl; rather, he believed April was part of a couple that enjoyed role play and that the female in that couple liked to play the role of a 15-year-old, home schooled girl. He testified, therefore, that he went to the Kroger to meet a couple "or at least part of a couple."

In support of his testimony, Castaneira introduced a copy of an e-mail that he allegedly sent to April on September 18, 2006. The e-mail begins, "Hey Guys," and is written as if it were going to a couple, with Castaneira asking "where all have you two searched . . . for other couples to swing with" and "how long have you two been in the lifestyle?" The e-mail goes on to apologize for not remembering all the details of their conversation, explaining that Castaneira had been overwhelmed with school

7

and work and noting that he had and his wife had received numerous responses to their online ads seeking other couples. Castaneira also writes, "So I can tell you're into role playing. What other roles do you play? From what I can remember you [April] like to play a home-school[ed] girl. And what does he play?"

There was no evidence, however, that Detective Jones ever received this e-mail. And on cross-examination, Castaneira admitted that this was an e-mail he furnished to his lawyer sometime following his indictment, claiming that he had found it by logging into his e-mail account; neither police nor Castaneira's own computer expert had located the e-mail on his laptop's hard drive. Castaneira further admitted that, even after he allegedly sent the e-mail, he continued to correspond with April and arranged for their meeting. He also acknowledged that there was nothing in April's AFF profile or in their conversations that indicated she was part of a couple.

Based on the foregoing evidence, the jury found Castaneira guilty. He then filed a motion for a new trial, which was denied. This appeal followed.

1. We first address Castaneira's claim that the trial court erred in refusing to instruct the jury on mistake of fact. There is nothing in the record that shows Castaneira ever requested a charge on mistake of fact. Moreover, during the charge conference, the trial court stated that it was not going to give an instruction on mistake

8

of fact, noting that the charge "which uses the word induced is not quite applicable." The court stated that instead it would give a charge on the State's burden of proof as to the defendant's knowledge of the facts necessary to commit the crime. Castaneira's lawyer did not object to this proposal, nor did she object to any part of the charge after it was given.

Despite Castaneira's failure either to affirmatively request a charge on mistake of fact or to object to its omission, we consider this claim of error because Castaneira asserts that it represented his sole defense. See *Price v. State*, 289 Ga. 459, 459 (2) (712 SE2d 828) (2011) ("[t]he trial court must charge the jury on the defendant's sole defense, even without a written request, if there is some evidence to support the charge") (citation and punctuation omitted); *Ellzey v. State*, 272 Ga. App. 253, 257 (1) (612 SE2d 77) (2005) ("[i]f an affirmative defense is raised by the evidence, including the defendant's own statements, the trial court must present the affirmative defense to the jury as part of the case in its charge, even absent a request") (Punctuation and footnote omitted).

Mistake of fact represents an affirmative defense, under which "[a] person shall not be found guilty of a crime if the act . . . constituting the crime was induced by a misapprehension of fact which, if true, would have justified the act or omission."

OCGA § 16-3-5. See also *Price*, supra at 459 (2). A defendant is not entitled to a jury charge on this defense, however, where the evidence shows that his ignorance or mistake of fact was "superinduced by the [defendant's own] fault or negligence." (Citation and punctuation omitted.) *Gabriel v. State*, 280 Ga. 237, 240 (5) (626 SE2d 491) (2006). Here, it appears that the trial court concluded that any mistake of fact by Castaneira resulted from his own fault or negligence. We agree.

This is not a case where an adolescent led the defendant to believe that she was an adult; rather, this is a case where the intended victim told the defendant that she was underage. And, having been made aware of that fact, Castaneira nevertheless continued his contact with April, engaging her in sexually explicit conversations and arranging to meet her for a sexual encounter. Even though Castaneira claimed that he believed "April" was an adult playing the role of an adolescent, he took no steps to confirm this belief. Specifically, after being informed that April was fifteen, Castaneira never asked her if she was, in fact, an adult posing as a child before arranging to meet her. Thus, any mistake or ignorance on Castaneira's part resulted from his own failure to inquire further into April's actual age. See *Gabriel*, supra at 240 (5). "It follows that a charge on mistake of fact under OCGA § 16–3–5 was not authorized." (Citation omitted.) Id.

Moreover, assuming that the evidence did raise the affirmative defense of mistake in fact, we still find no error in the trial court's failure to give the specific charge at issue. "A trial court . . . need not specifically charge on an affirmative defense when the entire charge fairly presents the issues, including the defendant's theory, to the jury." (Citations omitted.) *Tarvestad v. State*, 261 Ga. 605, 606 (409 SE2d 513) (1991). In this case, the trial court charged the jury on the presumption of innocence, the State's burden to prove Castaneira's guilt beyond a reasonable doubt, credibility of witnesses, and criminal intent as an essential element of the crimes. The jury was further charged that when a defense was raised by the evidence, the State bore the burden of disproving it, and that Castaneira's mere presence at the Kroger would not support his conviction. The court also gave a charge on the element of knowledge, instructing the jury that if the evidence showed "that the defendant had no knowledge that a crime was being committed or that the defendant did not knowingly and intentionally commit the charged offense, then it would be your duty to acquit the defendant as to that offense." As the court's charge informed the jury that the State was required to show beyond a reasonable doubt that Castaneira believed he was corresponding with and was going to meet a fifteen-year-old, and not an adult, the charge as a whole fairly presented Castaneira's defense to the jury. See *Butler v. State*,

11

298 Ga. App. 129, 131 (2) (679 SE2d 361) (2009) (no error in failing to charge on mistake of fact in prosecution for the sale of alcohol to some under the age of 21, where the charge made clear that the State was required to prove that the defendant knew that the purchaser was under 21).

2. Castaneira also asserts that the evidence is insufficient to sustain his convictions for criminal attempt to commit child molestation and criminal attempt to entice a child for indecent purposes. With respect to this claim of error,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In determining that question, we consider the inferences that can be logically derived from the evidence presented at trial. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Citation and footnote omitted.) *Wade v. State*, 305 Ga. App. 819, 821 (701 SE2d 214) (2010).

To convict Castaneira of criminal attempt to commit child molestation the State was required to prove that he took a substantial step towards doing "any immoral or indecent act to or in the presence of or with any child under the age of 16 years with

12

the intent to arouse or satisfy the sexual desires of either the child or [himself]".

OCGA § 16-6-4 (a) (1); OCGA § 16-4-1. To convict Castaneira of criminal attempt to entice a child for indecent purposes, the State had to prove that he took a substantial step towards soliciting, enticing, or taking "any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts." OCGA § 16-6-5 (a); OCGA § 16-4-1.

Castaneira contends that the State failed to prove beyond a reasonable doubt that he believed "April" was a 15-year-old girl, rather than an adult playing the role of an adolescent, and it therefore failed to prove that he had the requisite knowledge and intent to commit these crimes. We find no merit in this contention. While Castaneira did introduce some evidence, in the form of his September 18 e-mail, to support his claim that he believed he was dealing with an adult, that evidence was not conclusive. As noted above, the State impeached that evidence by showing that Detective Jones never received it, and that neither Castaneira's own computer expert nor local police were able to locate that e-mail on the hard drive of Castaneira's laptop. Morever, even after Castaneira allegedly sent that e-mail, he continued conversing with "April" without clarifying her age. And the content of his messages, including his questions about how she would get to the Kroger, where he should drop

13

her off after their encounter, and what time she had to be home, indicated a belief that he was communicating with someone under the age of 16. Additionally, although Castaneira contended that he believed "April" was part of a couple, he conceded during his testimony that nothing in her AFF profile or in their conversations supported that belief. Finally,

> given that [Castaneira] testified at trial as to the reasons underlying his conduct, it was solely for the jury, viewing that testimony in light of the other evidence, to assess [Castaneira's] credibility and determine whether his testimony was truthful. And if the jury concluded that his testimony was not truthful, as we must assume it did, the jury was entitled to take his untruthfulness as substantive and affirmative evidence of his guilt.

(Citations and punctuation omitted.) *Louisyr v. State*, 307 Ga. App. 724, 730 (1) (706 SE2d 114) (2011). Accordingly, the evidence is sufficient to sustain the convictions. See *Logan v. State*, 309 Ga. App. 95, 99-100 (2) (a) (709 SE2d 302) (2011) (evidence that defendant asked an undercover officer posing online as adolescent to engage in sexual intercourse and oral sodomy, even after being told that person was 14, and that defendant went to the location the two had discussed meeting for sex, in possession of a condom on his person, sufficed to show that defendant took a substantial step toward committing child molestation); *Smith v. State,* 306 Ga. App. 301, 302 (1) (702

14

SE2d 211) (2010) (affirming conviction for attempted child molestation where evidence showed that defendant engaged in sexually explicit conversations with the victim, drove to an arranged location to meet victim, and fled from officers).

3. Castaneira next claims that he received ineffective assistance of counsel. To prevail on a claim of ineffective assistance, Castaneira bears the burden of proving both that the performance of his lawyer was deficient and that he suffered prejudice as a result of this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984). If Castaneira cannot meet his burden of proving either prong of the *Strickland* test, then we need not examine the other prong. *Battles v. State*, 290 Ga. 226, 229 (2) (719 SE2d 423) (2011). Here, we find that Castaneira failed to establish that his lawyer's performance was deficient.

In determining whether defense counsel afforded his client adequate representation, "we bear in mind that 'judicial scrutiny of counsel's performance must be highly deferential.' *Strickland*, 466 U. S. at 689 (III) (A)." *Arnold v. State*, 292 Ga. 268 (2) (a) (__ SE2d __) (2013). Thus,

> [t]o demonstrate deficient representation, a convicted criminal defendant must show that counsel's representation fell below an objective standard of reasonableness. Such a defendant must overcome the strong presumption that counsel's performance fell within a wide range of

15

reasonable professional conduct and that counsel's decisions were made in the exercise of reasonable professional judgment. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the circumstances of the case.

(Citation, punctuation and footnote omitted.) *Smith v. State*, 302 Ga. App. 128, 133 (2) (690 SE2d 449) (2010).

Castaneira's ineffective assistance claim is premised on his lawyer's failure to object to the admission of certain material recovered from the hard drive of his laptop computer. This material, which Castaneira contends unduly prejudiced him, consisted of pornographic images, including videos that showed Castaneira performing sex acts either alone or with his wife. At the motion for new trial hearing, trial counsel testified that her decision not to object to the admission of these materials was strategic in nature. She explained that the evidence included "some information that we needed in our case in chief . . . . And I felt like it [this evidence] spoke directly to our defense, which was that he was a swinger . . . ." Additionally, the trial transcript shows that trial counsel made use of this evidence to show that while Castaneira was a sexually active adult, there was no evidence that he was a pedophile. Trial counsel emphasized, both in her examination of witnesses and in her opening and closing arguments, that

16

none of the pornographic images found on Castaneira's computer contained pictures of children or adolescents.

Given the strategic nature of counsel's decision with respect to this evidence, it "can provide no grounds for reversal unless it was so patently unreasonable that no competent attorney would have chosen it." (Citation, punctuation and footnote omitted.) *Mantooth v. State*, 303 Ga. App. 330, 336 (1) (b) (693 SE2d 587) (2010). And it is Castaneira who bears the burden of rebutting the strong presumption that this strategy was a reasonable one, made in the exercise of reasonable professional judgment. *Thornton v. State*, 301 Ga. App. 784, 793 (4) (689 SE2d 361) (2009). Castaneira cannot carry this burden.

The evidence against Castaneira was so substantial that his defense was to concede the conduct, but argue a lack of knowledge or intent. And to prove that lack of knowledge, Castaneira had to reveal his lifestyle as a swinger to the jury. Given these circumstances, trial counsel's decision to use the information and images contained on Castaneira's computer to argue that he would never knowingly attempt to seduce a 15 year old was not an unreasonable strategy. See, e.g., *Norton v. State*, ___ Ga. App. ___ (3) (case No. A12A1820, decided March 13, 2013) (given the substantial evidence against defendant, defense counsel acted reasonably in conceding

17

possession charges and arguing that while defendant was a user of methamphetamine, he was not a drug trafficker); *Paul v. State*, 257 Ga. App. 86, 87 (570 SE2d 399) (2002) ("considering the overwhelming evidence" that defendant had committed the crime at issue, trial counsel acted reasonably in arguing "that the State could prove robbery, but not armed robbery"). "That this strategy was ultimately unsuccessful in securing a defense verdict on all charges does not show that trial counsel's" performance was deficient. *Farris v. State*, 293 Ga. App. 674, 678 (3) (667 SE2d 676) (2008). Accordingly, the performance of Castaneira's trial counsel was not deficient.

4. Castaneira also asserts that the trial court erred in admitting into evidence transcripts of all of the online conversations between Castaneira and Detective Jones, posing as April. We disagree.

Detective Jones testified that although she could print out copies of her computer screen as an online chat occurred, she did not preserve the conversations in this fashion. Instead, she prepared a transcript of each internet chat by copying the text that appeared in the "instant message" box on her computer screen and then pasting that text into a word processing document. Detective Jones stated that she always copied and pasted the text so that the conversation appeared in the transcript in the order in which it actually occurred. In cases such as this, where more than one

18

conversation occurred, Detective Jones always numbered each transcript and wrote on it the date that the particular conversation took place. After creating each transcript, she would then print it out, initial it, and place it in the case file. The detective also stored the transcript on the computer she used for her internet investigations, which was a computer provided to the Peachtree City Police Department by the GBI for use solely in investigations involving internet crimes against children.

Relying on Detective Jones's testimony that she could have printed out copies of her computer screen as each conversation transpired, Castaneira argues that the trial court abused its discretion in admitting the transcripts, because they violated OCGA § 24-5-4,[7] which provides, "[t]he best evidence which exists of a writing sought to be proved shall be produced, unless its absence shall be satisfactorily accounted for." OCGA § 24-5-4 (a). This argument is without merit.

Under Georgia law, transcripts of conversations that occurred via online instant messaging are admissible provided they are created and/or authenticated by someone

_____

[7] OCGA § 24-5-4 was in effect at the time of Castaneira's trial. Effective January 1, 2013, this code provision was replaced by OCGA § 24-10-1002 ("[t]o prove the contents of a writing, recording, or photograph, the original writing, recording, or photograph shall be required") and OCGA § 24-10-1003 ("A duplicate shall be admissible to the same extent as an original unless: (1) A genuine question is raised as to the authenticity of the original; or (2) A circumstance exists where it would be unfair to admit the duplicate in lieu of the original.")

19

who participated in that conversation, and who testifies "that the transcript accurately represent[s] the on-line conversation." (Footnote omitted.) *Ford v. State*, 274 Ga. App. 695, 697 (1) (617 SE2d 262) (2005). Here, Detective Jones testified that she participated in all of the online conversations with Castaneira; that she created the transcripts by copying the text exactly as it appeared on her computer screen, without making any additions, omissions, or other alterations to that text; and that the transcript reflected the exact words used in the conversation, as well as the online names used by the persons who typed those words. "Under these circumstances, [Detective Jones's] testimony was tantamount to that of a witness to an event and was sufficient to authenticate the transcript." (Footnote omitted.) Id. at 698 (1). See also *Hammontree v. State*, 283 Ga. App. 736, 739 (3) (642 SE2d 412) (2007) (transcript of online conversation properly admitted where witness testified "that she was an actual participant in the instant message session at issue[,] . . . confirmed that the words printed on the paper were in fact the words used in the conversation[,] [and] . . . that the transcript . . . was actually printed from the computer . . . that she had used during the conversation").

Additionally, we find no merit in Castaneira's claim that because the transcripts introduced at trial were photocopies of the ones originally printed out by Detective

Jones, their admission violated OCGA § 24-5-4. The best evidence rule does not prohibit the introduction of photocopies, so long as the originals are "satisfactorily accounted for." OCGA § 24-5-4 (a). Here, the original transcripts were accounted for as having been placed in the case file, and there is no evidence that the photocopied transcripts were not exact duplicates of the originals. "Under these facts, the trial court did not abuse its discretion in admitting photocopies." (Citation omitted.) *Chastain v. State*, 231 Ga. App. 225, 226 (2) (498 SE2d 792) (1998).

5. Castaneira further claims that the trial court erred in sentencing him, because it failed to follow the guidelines set forth in OCGA § 17-10-6.2.[8] This claim of error is without merit because, as its plain language demonstrates, OCGA § 17-10-6.2 does not apply to convictions for *criminal attempt* to commit child molestation or to entice a child for indecent purposes; rather, it applies only to the completed crimes. See OCGA § 17-10-6.2 (a) (5), (6).

---

[8] That statute provides, in relevant part, that when a defendant is convicted of certain sexual offenses, including child molestation and enticing a child for indecent purposes, he "shall be sentenced to a split sentence which shall include the minimum term of imprisonment specified in the Code section applicable to the offense . . . and such sentence shall include, in addition to the mandatory imprisonment, an additional probated sentence of at least one year." OCGA § 17-10-6.2 (b). The statute also grants the trial court discretion, under certain circumstances, to "deviate from the mandatory minimum sentence." OCGA § 17-10-6.2 (c) (1).

21

Here, the trial court sentenced Castaneira to concurrent sentences of 10 years imprisonment for both criminal attempt to commit child molestation (count 1) and criminal attempt to entice a child for indecent purposes (count 2); 12 months imprisonment for possession of marijuana (count 6), concurrent with count 1; 10 years probation for computer pornography and child exploitation (count 3), consecutive to count 1; and 10 years probation for obscene internet contact (count 4), consecutive to count 3. The court also imposed fines of $25,000, $10,000, and $1,000 on counts 3, 4, and 6, respectively. These sentences were within the statutory range. See OCGA § 16-4-6 (b) (criminal attempt to commit a felony punishable by "imprisonment for not less than one year nor more than one-half the maximum period of time" that could be imposed for a conviction of the crime attempted); OCGA § 16-6-4 (b) (1) (a first offense of child molestation punishable "by imprisonment for not less than five nor more than 20 years"); OCGA § 16-6-5 (b) (enticing a child for indecent purposes punishable "by imprisonment for not less than ten nor more than 30 years"); OCGA § 16-13-2 (b) (misdemeanor possession of marijuana punishable "by imprisonment for a period not to exceed 12 months or a fine not to exceed $1,000.00, or both"); OCGA § 16-12-100.2 (d) (2) (computer pornography and child exploitation punishable "by imprisonment for not less than one nor more than 20 years and by a

22

fine of not more than $25,000.00"); OCGA § 16-12-100.2 (e) (2) (obscene Internet contact with a child punishable "by imprisonment for not less than one nor more than ten years or by a fine of not more than $10,000.00"). In light of this fact, the trial court did not err in sentencing Castaneira.

6. Finally, Castaneira contends that the trial court erred in failing to merge his convictions for criminal attempt to commit child molestation and criminal attempt to entice a child for indecent purposes. We disagree.

"A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1. Here, the State alleged that Castaneira took substantial steps towards committing both child molestation and enticing a child for indecent purposes when he: (i) solicited April, whom he believed to be 15 years old, to meet at the Kroger "for the purpose of engaging in acts of sexual intercourse and oral sodomy involving the sex organs of the person believed by the accused to be a child under 16 years of age and the mouth of the accused"; and (ii) traveled to the Kroger to meet with April. Because his conviction for both crimes was premised on the exact same conduct, Castaneira argues, the trial court should have merged those convictions as a matter of fact.

23

Under OCGA § 16-1-7, when the same conduct of an accused establishes "the commission of more than one crime, the accused may be prosecuted for each crime," unless "[o]ne crime is included in the other." OCGA § 16-1-7 (a) (1). To determine if one crime is included in and therefore merges with another, we apply the "required evidence" test set forth in *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006). Under that test, we examine "whether each offense requires proof of a fact which the other does not." *Lucky v. State*, 286 Ga. 478, 481 (689 SE2d 825) (2010). Here, to convict Castaneira of criminal attempt to commit child molestation, the State had to prove that he took a substantial step towards doing an immoral or indecent act to or with someone he believed to be under the age of 16, "with the intent to arouse or satisfy the sexual desires of either the child or the person." OCGA § 16-6-4 (a) (1). For purposes of convicting Castaneira of criminal attempt to entice a child for indecent purposes, the State was not required to prove that he was acting with an intent or desire to satisfy the sexual desires of either April or himself. Rather, to convict Castaneira of that crime, the State had to prove that he took a substantial step towards moving "any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts." OCGA § 16-6-5 (a). See *Leon v. State*, 237 Ga. App. 99, 107 (5) (513 SE2d 227) (1999) (unlike child molestation, enticing

24

a child for indecent purposes has an asportation element). The State did not need to prove a substantial step towards the asportation of April, however, to convict Castaneira of criminal attempt to commit child molestation. Accordingly, the convictions for criminal attempt to commit child molestation and criminal attempt to entice a child for indecent purposes each required "proof of a fact which the other [did] not." *Drinkard*, supra at 215. The trial court, therefore did not err in sentencing Castaneira on both of these convictions.

*Judgment affirmed. Miller, P. J., and Ray, J., concur.*