**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 14, 2021**

# In the Court of Appeals of Georgia

A21A1158. CHAMBERS v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Roy Chambers on a charge of burglary in the first degree. On appeal, Chambers contends that the trial court erred in denying his motion for directed verdict of acquittal as to the burglary charge and in failing to instruct the jury on the defense of mistake of fact. For the reasons noted *infra*, we affirm Chambers's conviction.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that in 2004, Anqous Cosby purchased property at 2973 Skyview Drive in Lithia Springs and immediately began a long-term renovation project on the house there. Approximately one year later, Cosby met Chambers playing basketball at a local gym.

---

[1] *See, e.g.*, *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018).

The two became fast friends, and over the course of the next ten years, Cosby often hired Chambers to help him with various construction projects. And during that same period of time, Cosby—who did not reside in the Skyview Drive house—occasionally allowed Chambers to stay there if he was not living with his girlfriend or if he was having difficulty finding work. But eventually, Cosby became frustrated with Chambers's unreliability in completing the odd jobs and handyman projects he requested in return for providing him with a place to stay.

At some point in 2017, Cosby loaned Chambers $300, but when Chambers failed to repay the money or complete any odd jobs to pay down the debt, Cosby's frustration with his friend finally reached its limit. Cosby told Chambers that while he did not want to sever their friendship completely, Chambers could no longer stay at the house. Chambers accepted Cosby's decision and moved out, and the two men remained in occasional contact.

In April 2018, Chambers contacted Cosby—somewhat out of the blue—and asked for assistance in his new business constructing wooden pallets. Cosby agreed and allowed Chambers to store lumber near a toolshed on the Skyview Drive property and to use some of his tools. Cosby also learned that Chambers had been living out of a large white box truck, which he used for his pallet business and frequently parked

2

at a nearby rental storage unit. So, while Chambers was building the pallets, Cosby allowed him to park his truck on the property's driveway at night and sleep there. Even so, Cosby did not give Chambers a key to either the toolshed or house, despite an earlier request from Chambers that he do so; and he was adamant that Chambers was not allowed inside the house. In fact, at the end of each day when he left the property for the night, Cosby securely locked both of those structures.

On April 30, 2018, Cosby was at his property burning leaves in a "burn pile" about 40 feet from the house under a permit he obtained from the Douglas County Fire Department. Chambers was there initially, then left briefly to sell some lumber, but later returned and resumed working. At approximately 8:30 p.m., Cosby walked around his property to make sure both the house and toolshed were locked and that the burn pile fire was extinguished. He then left for the evening. At that time, Chambers was still there working, and Cosby assumed that he would again be sleeping in his truck on the property's driveway.

At around 3:22 a.m. the following morning, Douglas County 911 received a call reporting that the Skyview Drive house was on fire. A sheriff's deputy was the first to respond to the call and arrived on the scene to find the second floor of the structure in flames. Then, after walking around the property, the deputy also observed

3

a burn pile but noted that it was on the opposite side of the part of the house that was on fire. Shortly thereafter, firefighters arrived. And while they eventually extinguished the blaze, the house was nearly destroyed. The deputy eventually contacted Cosby, who arrived at the property about an hour after the 911 call, and immediately noticed that Chambers's truck was not there. Cosby then attempted to call and text Chambers, but was unsuccessful in reaching him. By this time, fire-department investigators had also arrived on the scene, and Cosby gave them Chambers's name and information as a possible witness.

Subsequently, at approximately 5:30 a.m. that same morning, the two fire-department investigators located Chambers at the rental storage unit, and he agreed to be interviewed. And during that interview, Chambers admitted that he went inside Cosby's house, entering through a window, and took a rake, a shovel, and some camera equipment that he claimed belonged to him. He also claimed that he stayed at the property working until some time after 11:00 p.m. and then left to sleep at the storage unit because it was not as cold there. But video-surveillance footage from a nearby gas station showed Chambers filling up several small gas containers shortly after 1:00 a.m. that morning. And additional video surveillance footage from a nearby church showed Chambers's truck driving in the opposite direction of Cosby's house

4

at 2:58 a.m., followed quickly by his truck driving in the direction back toward the property just five minutes later. As a result, Chambers changed his statement to acknowledge purchasing the gas and then taking the containers back to the property; but he denied setting the house on fire or even being in the vicinity at the time the fire allegedly started. Nevertheless, the investigators arrested him.

Thereafter, the State charged Chambers, via indictment, with one count of burglary in the first degree and one count of arson in the first degree. The case then proceeded to trial, during which the State presented the aforementioned evidence. And during his testimony, Cosby reiterated unequivocally that he did not give Chambers permission to enter his house, did not provide him with a key, and did not leave a window open for him. The State also presented testimony from the gas station and church employees, respectively, who were responsible for maintaining the video-surveillance systems at each locale, and it played both videos for the jury.

After the State rested, Chambers moved for a directed verdict of acquittal, which the trial court denied. He then testified in his own defense, claiming that Cosby usually would hide a key for his use, but if not, Cosby allowed him to enter the house through a window. He further admitted to entering the house through a window on the night of the fire and taking a shovel and a rake (which were later found on the

5

property), as well as some camera equipment (which he claimed belonged to him). And while he acknowledged that Cosby had not left him a key and told him not to go into the house, he nonetheless claimed that he had permission to do so.

At the conclusion of the trial, the jury found Chambers guilty on the charge of burglary in the first degree but could not reach a verdict on the charge of arson in the first degree, and thus, the court granted a mistrial on that count. Chambers subsequently obtained new counsel and filed a motion for new trial, which the trial court denied after a hearing on the matter. This appeal follows.

1. Chambers first contends that the trial court erred in denying his motion for a directed verdict of acquittal as to the burglary-in-the-first-degree charge. We disagree.

This Court reviews the denial of a motion for directed verdict "under the same standard as that for determining the sufficiency of the evidence to support a conviction."[2] So, when a criminal conviction is appealed, the evidence must be "viewed in the light most favorable to the verdict, and the appellant no longer enjoys

---

[2] *Cawthon v. State*, 350 Ga. App. 741, 744 (1) (830 SE2d 270) (2019) (punctuation omitted).

6

a presumption of innocence."[3] Additionally, in evaluating the sufficiency of the evidence, we "do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[4] The jury's verdict will be upheld, then, so long as there is "some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[5]

In this case, Chambers was convicted of burglary in the first degree. A person commits this offense when he or she, "without authority and with the intent to commit a felony or theft therein, . . . enters or remains within an occupied, unoccupied, or vacant dwelling house of another or any building . . . or other such structure designed

---

[3] *Id.* (punctuation omitted); *see English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010) (noting that following conviction, an appellant no longer enjoys a presumption of innocence).

[4] *Jones v. State*, 318 Ga. App. 26, 29 (1) (733 SE2d 72) (2012) (punctuation omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (noting the relevant question is, after viewing the evidence in the light most favorable to the prosecution, could any rational jury found the essential elements of the crime beyond a reasonable doubt).

[5] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted); *accord Westbrooks v. State*, 309 Ga. App. 398, 399-400 (1) (710 SE2d 594) (2011).

for use as the dwelling of another."[6] Importantly, use of forced entry is "not a required element of burglary."[7] And a conviction for burglary "may be based upon circumstantial evidence if the proved facts are not only consistent with the hypothesis of guilt, but exclude every other reasonable hypothesis but the guilt of the accused."[8]

Here, the indictment charged Chambers with burglary in the first degree, alleging that he "did unlawfully without authority and with intent to commit a theft therein, enter a building designed for use as the dwelling of another, to wit: Anqous Cosby's house located at 2973 Skyview Drive . . . ." But Chambers maintains that because the rake and shovel were found on the property after the fire and the camera equipment belonged to him, his motion for directed verdict should have been granted—*i.e.*, the State failed to prove that he intended to commit a theft. This contention lacks merit.

Suffice it to say, determining whether a person who is accused of burglary "entered another's residence or other building with the intent to commit a theft is a

---

[6] OCGA § 16-7-1 (b).

[7] *Dupree v. State*, 303 Ga. 885, 888 (2) (815 SE2d 899) (2018).

[8] *Jones v. State*, 340 Ga. App. 142, 149 (2) (796 SE2d 765) (2017) (punctuation omitted).

matter for the jury to say, under the facts and circumstances proved."[9] Indeed, as a general rule the State "must, of necessity, rely on circumstantial evidence in proving intent."[10] And in fact, our Supreme Court has "long recognized that intent may be inferred from the presence of valuables inside the place the defendant sought to access."[11] Moreover, the fact that the defendant "may have failed in accomplishing his apparent purpose does not render a finding of burglary improper."[12] Importantly, a jury "may reject a defendant's explanation for his unauthorized entry [when] that explanation is inconsistent with other direct and circumstantial evidence."[13]

As discussed *supra*, the State presented evidence that Chambers admitted to entering Cosby's house through a window (after Cosby left for the evening), and to

[9] *Gorman v. State*, 318 Ga. App. 535, 537 (1) (b) (734 SE2d 263) (2012) (punctuation omitted).

[10] *Id.* (punctuation omitted); *see Daniel v. State*, 301 Ga. 783, 787 (III) (804 SE2d 61) (2017) (noting that "[g]enerally speaking, in a burglary trial a jury must, of necessity, find intent to commit a felony on the basis of circumstantial evidence." (punctuation omitted)).

[11] *Daniel*, 301 Ga. at 787 (III); *accord Steadman v. State*, 81 Ga. 736, 736 (2) (8 SE 420) (1888).

[12] *Gorman*, 318 Ga. App. at 537 (1) (b) (punctuation omitted); *accord Long v. State*, 307 Ga. App. 669, 671 (1) (705 SE2d 889) (2011).

[13] *Gorman*, 318 Ga. App. at 537 (1) (b) (punctuation omitted); *accord Long*, 307 Ga. App. at 671 (1).

taking a rake, a shovel, and some camera equipment. Furthermore, Chambers did so despite Cosby refusing to give him a key and emphatically stating that he was not permitted inside the house when Cosby was not present. Moreover, in addition to the items Chambers admitted taking, Cosby testified that the house contained other valuables, including a television, a computer, a cell phone, and furniture. And while Chambers testified that he had permission to enter the house through the window and had no intent to steal anything, the jury was not required to believe him.[14] Accordingly, the evidence was sufficient to support Chambers's conviction on the charge of burglary in the first degree, and thus, the trial court did not err in denying his motion for directed verdict.[15]

---

[14] *See id.* & accompanying text.

[15] *See Gorman*, 318 Ga. App. at 537-38 (1) (b) (holding that despite defendants' claim that they were at house to run wiring, evidence defendants entered home without permission, and opened cabinets and dressers while inside was sufficient to prove intent to commit theft and, thus, would support conviction for burglary); *Long*, 307 Ga. App. at 670-71 (1) (holding that evidence defendant's entry into house was unauthorized, evidence establishing the presence of valuables in the house, and evidence that contradicted defendant's innocent explanation for his entry, authorized the jury to infer that defendant intended to commit a theft when he entered the house); *Wilson v. State*, 304 Ga. App. 743, 746 (1) (b) (698 SE2d 6) (2010) (finding that victim's testimony that defendant—her former boyfriend—was not on her lease, did not have a key, and did not have permission to be in her home was sufficient to prove that defendant had, without authority, entered house to take victim's property and, therefore, support burglary conviction).

2. Chambers also contends that the trial court erred in failing to instruct the jury, *sua sponte*, on the defense of mistake of fact. Again, we disagree.

Importantly, Chambers did not request a charge on mistake of fact or object to the trial court's failure to provide such a charge.[16] And under OCGA § 17-8-58, "[a]ny party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate."[17] The failure to so object precludes "appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects the substantial rights of the parties."[18] In such cases, the proper inquiry is "whether the instruction was erroneous,

---

[16] During the charge conference, Chambers requested that the trial court charge the jury on criminal trespass as a lesser-included offense of burglary. The trial court declined, and Chambers specifically objected to that refusal following the jury charge. But on appeal, Chambers has not enumerated this particular refusal as a claim error, so it has been abandoned. *See Carroll v. Piedmont Med. Care Corp.*, 352 Ga. App. 348, 349, n. 2 (834 SE2d 868) (2019) (noting that appellant abandoned a potential argument by failing to enumerate it as error).

[17] OCGA § 17-8-58 (a).

[18] OCGA § 17-8-58 (b); *see also Alvelo v. State*, 290 Ga. 609, 614 (5) (724 SE2d 377) (2012) (holding that OCGA § 17-8-58 (b) requires an appellate court to review for plain error an alleged jury-instruction error to which no objection was raised at trial); *Daniels v. State*, 310 Ga. App. 562, 565 (2) (714 SE2d 91) (2011) (same).

11

whether it was obviously so, and whether it likely affected the outcome of the proceedings."[19] Consequently, because Chambers failed to object to the jury charges, our review is limited to consideration in this regard.[20]

Turning to the issue before us, a "[m]istake of fact represents an affirmative defense, under which a person shall not be found guilty of a crime if the act constituting the crime was induced by a misapprehension of fact which, if true, would have justified the act or omission."[21] And if the defense was raised by the evidence, including the defendant's own statements, the trial court "would have been required to present the affirmative defense to the jury as part of the case in its charge, even absent a request."[22] But the affirmative defense would not have to be "specifically

---

[19] *Alvelo*, 290 Ga. at 615 (5) (punctuation omitted); *accord Daniels*, 310 Ga. App. at 565 (2).

[20] *See* OCGA § 17-8-58 (b); *see also Russell v. State*, 309 Ga. 772, 782 (3) (a) (848 SE2d 404) (2020) (holding that because defendant's trial counsel failed to object to the pretrial jury charge, defendant's argument that the charge was inadequate is limited to reviewing the charge for plain error).

[21] *Ogle v. State*, 349 Ga. App. 872, 874 (827 SE2d 61) (2019) (punctuation omitted); *see* OCGA § 16-3-5.

[22] *Price v. State*, 289 Ga. 459, 460 (2) (712 SE2d 828) (2011) (punctuation omitted).

12

charged if the case as a whole had been fairly presented to the jury."[23] Furthermore, a defendant is "not entitled to a jury charge on this defense [when] the evidence shows that his ignorance or mistake of fact was superinduced by the defendant's own fault or negligence."[24]

Specifically, Chambers argues that a charge on mistake of fact was warranted because he believed, based on past experience, that Cosby had given him permission to enter the house through a window. But this alleged belief was belied by his own admission during his testimony that Cosby told him that he was not allowed inside the house. Additionally, the evidence shows that Cosby explicitly refused to give Chambers a key (despite his request for one), told him that he was not allowed inside the house, and made a point to lock the house and toolshed before leaving each evening regardless of whether Chambers was still on the property constructing pallets. Given these circumstances, the evidence largely contradicts, rather than raises, a mistake-of-fact defense, and, at the very least, makes clear that any mistake

[23] *Id.* (punctuation omitted); *accord Ogle*, 349 Ga. App. at 874.

[24] *Ogle*, 349 Ga. App. at 874 (punctuation omitted); *accord Castaneira v. State*, 321 Ga. App. 418, 422 (1) (740 SE2d 400) (2013); *see Gabriel v. State*, 280 Ga. 237, 240 (5) (626 SE2d 491) (2006) (noting that "[i]gnorance or mistake of fact constitutes a defense to a criminal charge only if it is not superinduced by the fault or negligence of the party doing the wrongful act" (punctuation omitted)).

13

of fact by Chambers resulted from his own fault or negligence. Accordingly, the trial court did not err—certainly not plainly—when it failed to instruct the jury, *sua sponte*, on that affirmative defense.[25]

For all these reasons, we affirm Chambers's conviction and the denial of his motion for new trial.

*Judgment affirmed. Mercier and Pinson, JJ., concur.*

---

[25] *See Ogle*, 349 Ga. App. at 874-75 (holding that trial court did not err in failing to instruct jury, *sua sponte*, on mistake of fact in burglary case because even assuming defendant's action in entering the victim's carport, was induced by the misapprehension of fact that the victim had given him permission the previous year, that misapprehension would not have justified defendant's action in backing his truck into the carport and entering the carport a second time—after confirming on his first entry into the carport that no one was home—and then taking victim's lawn equipment); *see also Gabriel*, 280 Ga. at 240 (5) (holding that defendant was not entitled to charge on mistake of fact in felony murder trial given that by defendant's admission, he could not see anything when he fired gun, but rather shot blindly at an unidentified noise, and thus any mistake on his part as to identity of his intended target was solely result of his own negligence); *Castaneira*, 321 Ga. App. at 422 (1) (holding that evidence did not support *sua sponte* jury charge on defense of mistake in fact, in prosecution for attempt to commit child molestation because any mistake of fact by defendant as to the age of his intended victim resulted from his own negligence in that, despite being told by intended victim that she was 15 years old, defendant nevertheless continued his contact with her). *Cf. Price*, 289 Ga. at 460-61 (2) (holding that trial court erred in failing to instruct the jury on mistake of fact in burglary case given evidence that defendant entered the home through an unlocked door because he thought the home was for sale and additional evidence that the defendant saw "for sale" and "open house" signs that led him to believe that he was authorized to enter the house).

14